ROSCOE BROWN AND BETTY BOLDT, HUSBAND AND WIFE AND RUSSELL BROWN AND SARAH JANE BROWN, HUSBAND AND WIFE *v.* THOMAS C. HEIDERSBACH, CANDACE CARE, EMERSON A. SMITH AND KATHLEEN SMITH.

[No. 3-375A34. Filed March 8, 1977. Rehearing denied April 13, 1977. Transfer denied February 16, 1978.]

*David Peebles*, of Fort Wayne, for appellants.

*Jerrald A. Crowell*, of Fort Wayne, for appellees.

STATON, P.J.—The Browns platted some of their property on Lake George. The Smiths and Heidersbachs held title to several of the platted lots and enjoyed an easement to the lake. Later, the Browns platted additional property and gave the titleholders of these lots the use of the same easement. The Smiths[1] and the Heidersbachs brought an action which sought an exclusive use of the easement and damages. The trial court rendered a judgment for the Smiths and Heidersbachs. Later, the Browns appealed.

After reviewing the evidence, we conclude that the trial court committed reversible error, and we reverse.

## I.

### Evidence

The easement is the east twenty feet of Lot Number 48 in the First Addition (original) of Kopekanee Beach. Lewis and Pearl Brown, Browns' parents, had recorded the Plat of the Second Addition to Kopekanee Beach on March 12, 1947. The Browns were deeded Lot 48 on April 6, 1973, by Pearl Brown.[2]

Lewis and Pearl Brown had conveyed Lot 50 in the Second Addition to Harold and Charlotte Worthman on September 18, 1950. Worthmans' deed contained the following clause:

"Right of way to the lake is hereby given over a 20' easement located in Kopekanee Beach, First Addition."

Worthmans conveyed Lot 50 to Smiths on June 27, 1960; Smiths' deed did not contain any reference to the easement.

---

1. Browns had contested, in the trial court, Smith's right to use the easement, but concede on appeal that both Smiths and Heidersbachs are dominant owners, and that the easement is appurtenant to their lots.
2. Lewis left his interest to Pearl.

Lewis and Pearl conveyed Lot 52 in the Second Addition to Roger and Vera Kierstead on August 26, 1949; Kiersteads' deed included the following clause:

> "Also, an easement to the shore of Lake George, over the east twenty (20) feet of lot Numbered 48 in the Original Plat of Kopekanee Beach, which easement is to be used in common with other lot owners."

Kiersteads deeded Lot 52 and Lot 53 to Arnie and Jeane Heidersbach on July 27, 1953; that deed included the above clause. Heidersbachs inherited Lots 52 and 53 on September 25, 1973. The relative positions of the lots are depitced in Sketch A.

## Sketch A

In June, 1973, the Browns erected a post on the easement. Later, in March, 1974, the Browns removed a pier which was in the lake but attached to the easement. Then, on June 6, 1973, Browns platted real estate adjacent to the Second Addition of Kopekanee Beach at Lake George, Indiana, which real

estate was platted at Kopekanne Acres. The Smiths and the Heidersbachs filed a complaint against Browns on December 26, 1973, seeking an injunction to prevent Browns from expanding the number of persons authorized to use the easement. On May 29, 1974, the Smiths and the Heidersbachs filed a supplemental complaint in which they also sought damages for the removal by Browns of the pier and an injunction against Browns to prevent further removal of future piers.

The trial court found for the Smiths and the Heidersbachs, and it entered the following:

". . . The Court further finds that the Defendants have installed a certain post with signs attached thereto in the easement which is the subject of this proceeding, being located in the East 20 feet of Lot numbered 48, in the Original Plat of Kopekanee Beach at Lake George in Steuben County, State of Indiana, which post shall be removed by the Defendants and the area where the same has been established restored to its original level and seeded within ten days from this date and failing so to do damages shall accrue against said Defendants at the rate of $1,000.00 per day thereafter. The Court further finds that a certain pier installed in connection with said easement in said lake which Defendants cause to be removed in the spring or early summer of 1974 shall be returned and replaced in the same condition as the same was before removal to the written satisfaction of the Plaintiffs within ten days or judgment shall be rendered against the Defendants in the amount of $600.00. The Court further finds that the Defendants should be enjoined and restrained from obstructing said easement or in any manner interfering with the Plaintiffs' right to the peaceful use and possession of said easement as the same has been used and enjoyed by the Plaintiffs and their predecessors in title for more than twenty years last past. The Court further finds that said Defendants should be restrained and enjoined from in any manner attempting to expand the number of persons entitled to the use of said easement or to dedicate the same to public use but that the use of the same shall be restricted to the Plaintiffs and their successors in interest to the real estate described as belonging to said Plaintiffs in the complaint filed herein."

Browns filed a Motion to Correct Errors in which they contend that the judgment is excessive, is not supported by suf-

ficient evidence, is contrary to the evidence, and is contrary to law; this motion was overruled, and the Browns brought this appeal.

## II.

### Easements

Easements may be created by grant or by prescription.[3] Two types of easements exist: (1) an easement is appurtenant if it passes (by conveyance or inheritance) with the dominant tenement;[4] (2) an easement is in gross if it is personal to the owner of the dominant tenement. *Sanxay* v. *Hunger* (1873), 42 Ind. 44. Usually, easements arise to fill some need or serve some purpose. That purpose, whether expressed in the grant, implied, or acquired through prescription, is the focal point in the relationship which exists between the titleholders of the dominant and servient estates. The servient estate is burdened to the extent necessary to accomplish the end for which the dominant estate was created. The titleholder of the dominant estate cannot subject the servient estate to extra burdens, *New York Cent. R. Co.* v. *Yarian* (1942), 219 Ind. 477, 39 N.E.2d 604, any more than the holder of the servient estate can materially impair or unreasonably interfere with the use of the easement. *Smith* v. *Holloway* (1890), 124 Ind. 329, 24 N.E. 886.

In an action to establish an easement by prescription, the burden is on the dominant titleholder to show that the use was adverse. Each element of the prescriptive right must be established as a necessary, independent, and ultimate fact. A permissive use cannot be adverse so as to ripen into an easement by prescription. *Monarch Real Estate Co.* v. *Frye* (1921), 77 Ind. App. 119, 133 N.E. 156. One who has established an easement through prescription

---

3. IC 1971, 32-5-1-1 (Burns Code Ed.).

4. The fee simple titleholder of the land on which the easement was created is the holder of the servient estate (because his land is burdened by the easement); the grantee (or adverse possessor if that is the case) of the easement is the holder of the dominant estate.

cannot assert that he is the exclusive user. *Riggs* v. *Springfield* (1939), 344 Mo. 420, 126 S.W.2d 1144. If an easement is enjoyed under a deed there can be no adverse enjoyment until the expiration of the right under the deed. 28 C.J.S., *Easements* § 8. All easements are limited to the purpose for which they were created, and their enjoyment cannot be extended by implication. *U.S.* v. *Johnson* (D. Wash. 1933), 4 F. Supp. 77. Easments created by grant depend, for the determination of the extent of right acquired, upon the terms of the grant properly construed; general rules of construction apply. 28 C.J.S., *Easements* § 75.

## III.

### Lake Easement

Since the existence of the twenty foot easement is not disputed by the parties, the question raised upon appeal relates to what rights are incident to the easement. We discern three distinct issues.

A. *Rights necessarily incident to an express easement "to a lake."*

Considering first the express grant, we note the rule as cited in *Lennertz* v. *Yohn* (1948), 118 Ind. App. 443, 450, 79 N.E.2d 414, 417:

> ". . . With reference to the manner of grant, the rule is that in describing an easement, all that is required is a description which identifies the land that is the subject of the easement and *expresses the intention of the parties.*" (Emphasis added.)

The Heidersbach easement was created within the 1949 deed to Kiersteads by the phrase "Also, an easement *to the shore* of Lake George. . . ." (Emphasis added.) The Smith easement began in Worthmans' 1950 deed with the words *"Right of way to the lake* is hereby given. . . ." (Emphasis added.) The description was sufficient for all parties, and by the unambiguous terms in the respective deeds an access easement was created.

The Smiths and the Heidersbachs urge this Court to include within the phrases "to the lake" and "to the shore" more than mere access. They contend that the easement created rights in the dominant owners to *attach* to the easement *and use* a pier. Thus, the Smiths and the Heidersbachs maintain that use of the lake for docking boats is a right incident to an access easement to the lake. Moreover, they argue that even if the granting words do not indicate such right, the continued use by the dominant owners should be considered in defining the extent of the easement.

The easement was created within two instruments. At the time the original conveyances were made, Browns' predecessors in interest were engaged in lake real estate development. Since every lot could not front the lake, the developer provided access to the lake, by the express grant of the easement. Whether riparian rights inure to the dominant estate of a lakeside easement is a question of first impression in Indiana.

The Supreme Court of *Michigan* in *Schofield et al.* v. *Dingman et al.* (1933), 261 Mich. 611, 613, 247 N.W. 67, 68, held that " 'Riparian rights,' accorded lot owners separated from the beach by intervening lots, *can be given no greater meaning than right of access to the beach* and enjoyment thereof for the purposes of recreation." (Emphasis added.) That Court reaffirmed that position in *Thompson* v. *Enz* (1967), 379 Mich. 667, 683-84, 154 N.W. 2d 473, 482, and added, quoting from a Minnesota decision:

> " ' " ' * * * There are certain interests and rights vested in the shore owner which grow out of his special connection with such waters as an owner. *These rights are common to all riparian owners on the same body of water, and they rest entirely upon the fact of title in the fee to the shore land.*' " ' " (Original emphasis.)

The Smiths and the Heidersbachs do not dispute the fact that the Browns hold title in fee. The Browns, therefore, are the only "riparian" titleholders.

Further illustration is found in a New York case which considered a very similar easement dispute. In the New York case, the dominant titleholder of an access easement had constructed a dock at the end of the easement. The servient titleholder procured an injunction to compel the removal of the dock. Thereafter the dominant titleholder built a boat hoist and catwalk beyond the low water mark. The lake was owned by the State of New York. The New York Court held that:

> ". . . The Plaintiff [dominant owner] is not a riparian owner with regard to Canandiagua Lake and her easement to get to the Lake does not give her the rights of a riparian owner. . . . As a member of the public certainly plaintiff's rights do not under the facts in this case exceed the riparian rights of the defendant. In fact the riparian rights of the defendant would be severely limited were the plaintiff to prevail. . . ." (Citations omitted). (Emphasis added). *Allen* v. *Potter* (1970), 64 Misc.2d 938, 316 N.Y.S.2d 790, 793.

We conclude that by the express terms of the grants creating the easement no riparian rights were intended to be conveyed. An instrument creating an easement must be construed according to the intention of the parties, as ascertained from all facts and circumstances, and from examination of all its material parts. *Cleveland, etc., R.Co.* v. *Griswold* (1912), 51 Ind. App. 497, 97 N.E. 1030. To conclude that the Smiths and the Heidersbachs were granted riparian rights (the right to dock boats at a pier attached to the access easement) under the terms of the grant would be to severely limit Browns' riparian rights as owners of the fee.[5]

B. *Expanding the number of dominant titleholders by grant.*

The Browns attempted to extend the use of the easement to purchasers of lots in Kopekanne Acres, a development platted in 1973. The Smiths and the Heidersbachs objected to any other persons using the easement; in other words, they wanted the easement to be exclusive. The trial court granted

---

5. When expressly given in a grant, this does not, necessarily prevent the *use* of riparian rights by an easement titleholder.

an exclusive easement: ". . . Defendants should be restrained and enjoined from in any manner attempting to expand the number of persons entitled to the use of said easement or to dedicate the same to public use but that the use of the same shall be restricted to the Plaintiffs and their successors in interest. . . ."

The Heidersbachs' deed contained the words "which easement is to be used in common with other lot owners." Smiths' deed contained no reference to the easement at all, although the Worthman deed had simply described the easement without mentioning other users. Heidersbachs' interest in the easement was created in 1949, Smiths' in 1950. Heidersbachs' predecessors in interest did not object to Smiths' predecessors in interest. Yet, both families argue that the most "in common with other lot owners" could mean is *in common with lot owners* in Kopekanee *Beach,* not Kopekanne *Acres,* since Kopekanne *Acres* was not platted at the time the easement was created. Whether or not Kopekanne *Acres* was *platted* at the time the 1949 deed was executed is immaterial. Browns conveyed land and granted an easement which by its express terms was not exclusive. "In common with other lot owners" gave notice to the grantee of the non-exclusivity. The use was extended by another deed one year later. Although neither Smiths nor Heidersbachs had a right to an exclusive use of the easement, they now contend that because they were accustomed to exclusive use, exclusive use was now their right.

Before we discuss any possible prescriptive aspect of this controversy, we note that, generally, exclusivity should be clearly evidenced in the grant of the easement. Absent an affirmative restriction, the titleholder of the servient estate may make any use of the easement which would not materially impair or unreasonably interfere with the use of the easement by the dominant estate titleholder. *Smith* v. *Holloway, supra.* As we have discussed, the express grant provided an access easement: "to the lake." All of the testimony at trial confirmed the fact that access

was in no way impaired. In fact, the Smiths stated that even with the post there was no obstruction "in walking" and trucks and cars could get down to the lake. The Smiths and the Heidersbachs each objected to expansion of the easement to other families because it would interfere with the use of the pier, but the Smiths admitted that fifteen families would not affect the use for walking to the lake. The Heidersbachs complained that the post "would have obstructed my view of the lake." Yet, "view" was not included in the access grant and cannot be obtained in Indiana through prescription. *Stein* v. *Hauck* (1877), 56 Ind. 65.

Since the testimony at trial was to the effect that the Browns were not "materially impairing or unreasonably interfering" with the use of the easement for access, the only way the judgment of the trial court may be affirmed is for this Court to find that exclusivity of the easement was acquired by prescription.

## C. *Exclusivity.*

When questioned about their use of the land, the Heidersbachs stated that the "use of the ground was by permission of the deed." The Smiths testified that the purpose of the use was for access to the lake, and that they enjoyed this use from the date of purchase. Both dominant owners contend now that (i) their access use is exclusive because they alone used the easement over twenty years, and (ii) they have a prescriptive right to use a pier exclusively.

To establish an easement by prescription, one must show actual, open, notorious, continuous, uninterrupted, adverse use for twenty years under a claim of right or show such continuous adverse use with the knowledge of the owner of the land. *Monarch Real Estate Co.* v. *Frye, supra.* The burden of demonstrating adversity is upon the party attempting to establish the easement. *Monarch Real Estate Co.* v. *Frye, supra.*

### (i) *Access exclusive?*

Since the dominant titleholders' use of the easement for access was in no way inconsistent with the servient titleholder's rights (to use the land himself, which he did, not materially impairing the dominant titleholders' rights), the use was not adverse. Since the use was not adverse, the easement cannot be expanded by prescription into an exclusive easement. The use of the land for access was expressly permissive. If the facts and circumstances of a case lead to the conclusion that the user was merely permissive, they are fatal to the prescription. *Nowlin et al.* v. *Whipple et al.* (1889), 120 Ind. 596, 22 N.E. 669.

Until the Browns met with resistance from the Smiths and the Heidersbachs there was no adversity in their use. The Smiths and the Heidersbachs may have thought that their use of the easement was exclusive; however, those thoughts, until transformed into actions, were not inconsistent with the express terms of the grant. Adversity arose when the Browns, under the express terms of the Heidersbachs' deed, prepared to extend the use of the easement to other lot owners. *That* adversity has not existed for the statutorily required twenty years. No exclusive access easement exists.

### (ii) *Pier exclusive?*

As discussed above, the dominant titleholder of an access easement does not hold the riparian rights inherent in the servient titleholder. The right to construct a pier and connect it to the easement did not belong to anyone other than Browns.

The Smiths and the Heidersbachs do not contend that they have prescriptive rights to the fee. Throughout the trial they conceded that the fee is held by the Browns. As long as the use was permissive, and explained by the grant, this Court will not expand that use into a prescriptive title to the fee. *Switzer* v. *Armantrout* (1939), 106 Ind. App. 468, 19 N.E.2d 858.

The fact that the Browns allowed the Smiths and the Heidersbachs to use a pier during an extended period of time does not support the trial court's finding that the Smiths and the Heidersbachs had obtained prescriptive rights to use a pier—exclusively or in any other way. A pier would not necessarily overburden the easement (*see, Null* v. *Williamson* [1906], 166 Ind. 537, 78 N.E. 76), but to the extent that the dominant titleholders refused to allow the expressly authorized expansion of the right of way to other lot owners, they were wrong.

## IV.

### Conclusion

In reversing the decision of the trial court, we would note that the judgment assessing damages of $1000 per day for failure to remove the post within ten days was excessive, even had the Smiths and the Heidersbachs properly prevailed. The Smiths and the Heidersbachs should remove the pier from the easement and replace the post. The Browns, as titleholder of the fee, may expand the number of dominant titleholders.

We reverse and remand to the trial court with instructions to vacate its judgment and to enter a judgment for the Browns which is not inconsistent with this opinion.

Hoffman and Garrard, JJ., concur.

NOTE.—Reported at 360 N.E.2d 614.