George C. NADERMAN, Justin Naderman, Rose M. Baur, Jane C. Reed, Edna Ann Cardinal, Albert F. Naderman, Esther D. Ruehl, and Estate of George J. Naderman, Appellants,

v.

Lawrence A. SMITH, Rebecca M. Smith, Their Heirs, Assigns, and others Taking, Through and By Them, Appellees.

No. 16A048608–CV–265.

Court of Appeals of Indiana, Fourth District.

Aug. 31, 1987.

Kevin W. Ault, Clarkson Law Offices, Rushville, for appellants.

Margaret A. Polanski, Margaret A. Polanski, Pro. Corp., Greensburg, for appellees.

MILLER, Presiding Judge.

The Appellants (the Nadermans) initiated suit to quiet title to a ten foot wide gravel lane which runs from the County Road on the Appellees' (the Smiths) property to the Nadermans' farmland. The Nadermans claimed fee simple ownership of the lane through adverse possession (Count I); that the Smiths had trespassed on the private road and destroyed a hedge, trees, and gates (Count II); and sought a permanent injunction against the Smiths proscribing use of, and damage to, the private road (Count III). The trial court granted both parties access, use, and joint maintenance of the road. The court declared the Smiths own, subject to the Naderman's easement, the lane to its center line where it abuts their property, and the Nadermans own the lane on the other side, subject to the Smith's easement. The Naderman's appeal, claiming the trial court erred in concluding (1) the Nadermans interest in the lane was an easement and, (2) that the Nadermans did not adversely possess the private road because the evidence showed more than 20 years exclusive and hostile possession.

We affirm.

## FACTS

While the evidence in this case does not reveal clear chain of title for either the Smith's or the Nadermans' property, all of the property at issue, located in Decatur County, Indiana, was owned by John Hessler, Sr. and his wife Anna Mary in 1867. John and Anna Mary had at least two sons, John Jr. and Adam. The Nadermans concede that John and Anna Mary conveyed to John Jr. the land now owned by Larry and Rebecca Smith. Record, p. 240–41. As part of the recording of the conveyance, John Hessler, Sr., and his wife, granted the right "to use" a gravel lane located on John Jr's property to their son Adam Hessler and to George Stahl. Defendant's Exhibit A. Adam Hessler owned property contiguous to the gravel lane and to John Jr's land. Adam's land passed, presumably through the family, to the current owner, Clara Hessler Naderman, Adam Hessler's granddaughter. Record, p. 187. The Nadermans concede that the Smiths purchased their property in 1984 from the Blankmans, who were successors in interest to John Hessler, Jr. Record, p. 240–241.

In April 1984 Larry and Rebecca Smith purchased two parcels of land from the Blankmans. Smith began using the lane immediately. The Nadermans put a lock on the gate and told Smith not to use it. Smith cut the chains on the gate three times and used the lane.

After relations between the two neighboring families had degenerated, the Nadermans filed suit: 1) to quiet title, claiming

fee simple ownership of the private road through adverse possession (Count I); 2) alleging the Smiths had trespassed on the private road and destroyed a hedge, trees, and gates (Count II); and, 3) seeking a permanent injunction against the Smiths proscribing use of, and damage to, the private road (Count III). After a trial to the court on April 4, 1986, the judge made the following findings of fact and conclusions of law, which were requested by the Nadermans pursuant to Ind.Rules of Procedure, Trial Rule 52(A), and entered the following judgment:

"FINDINGS OF FACT

1. Lawrence Smith and Rebecca Smith, husband and wife, own legal title to two parcels of real estate in Marion Township, Decatur County, Indiana, one containing 40 acres and the other approximately 58 acres. They acquired this property in April, 1984 from the estate of Clara M. Blankman.

2. The estate of George J. Naderman owns legal title to land in Marion Township which joins the east boundary of Smiths' 58–acre parcel and is immediately south of Smiths' 40–acre parcel.

3. A gravel lane approximately ten feet wide begins at Decatur County Road 950S and runs east across the north line of Smiths' 58–acre parcel, turning southeast at the Smith-Naderman boundary and running southeast along the two property lines. Approximately one-half of the width of the lane is on Smiths' property.

4. An 1867 contract concerning the sale of the land now owned by the Smiths states that a previous owner, John Hessler, had set apart 'the use of a road' through the land Smiths now own, 'for the use of Adam Hessler and George Stahl.'

5. The records of the auditor of Decatur County do not show to what property owner the lane is assessed.

6. Prior to 1935, the lane was maintained jointly by the Blankman family (Smiths' predecessors) and the Hessler family (Naderman's predecessors). Maintenance included grading and spreading gravel. The Blankman family used the lane in their farm operations prior to 1940.

7. Beginning in the late 1940's, the Naderman family maintained the lane. They did not request assistance from the Blankmans.

8. In 1972 or 1973, the Nadermans erected a gate across the lane approximately sixty feet east of the county road.

9. At the time the gate was built, George Naderman told Clara Blankman that he was building it to keep strangers out, since the lane had been used as a 'lover's lane.'

10. 'No Trespassing' signs were posted from time to time by the Nadermans over the years near the present location of the gate.

11. The gate across the lane was kept closed with a wire but was not locked prior to 1984.

12. Cyril Blankman, Alvin Blankman and Jim Blankman, who grew up on the farm now owned by Smiths, visited the property on a monthly basis or more often until its sale in 1984. They used the lane for access to the 40–acre parcel for hunting and similar recreational purposes. Jim Blankman used the lane in 1983 to haul a load of wood out from part of the Blankman farm.

13. Larry Smith used the lane as a child in 1963 to go hunting. He used it in 1976 or 1977 to drive back to the 40–acre field and deliver chains to the tenant farmer, whose equipment was stuck in the mud. He saw grain being hauled from the 40–acre field along the lane prior to 1984.

14. No member of the Naderman family has ever told a member of the Blankman family not to use the lane.

15. Larry Smith began using the lane immediately after purchasing his land from the Blankman estate in April, 1984.

16. In 1984, Albert Naderman put a lock on the gate and told Larry Smith not to use the lane. Smith cut chains on the gate on three occasions and used the lane.

## CONCLUSIONS OF LAW

1. The Nadermans as plaintiffs have the burden of proving their ownership of the land by adverse possession.

2. The Nadermans have failed to prove by a preponderance of evidence that they have had exclusive possession of the lane for ten years.

3. The Nadermans have failed to prove by a preponderance of evidence that they have held the land adversely or in a hostile manner against the Blankmans. The Nadermans' acts of maintenance were consistent with their interest in the lane as holders of an easement. The gate constructed on the lane was represented to the Blankman family as meant to exclude third parties, and the Blankmans were not told to stop using the road.

4. The Nadermans' 'hostile' or adverse possession of the land began in 1984 when they put a lock on the gate and notified Larry Smith of their claim of ownership.

5. The Nadermans have failed to prove by a preponderance of evidence that they paid the real estate taxes assessed on the lane, as required by I.C. 32–1–20–1.

6. Lawrence Smith and Rebecca Smith own the entire parcel of real estate described in the deed to them, subject to an easement in favor of the estate of George J. Naderman as owner of legal title to the land east of the Smiths' land, and in favor of Clara Naderman, widow and sole devisee under the will of George J. Naderman. This easement runs with the land and will pass with the land to Clara Naderman's successors in interest.

7. The Smiths own the land to the center of the gravel lane, subject to the easement. The Naderman estate owns the land to the center of the gravel lane along the portion of the lane which borders their property, subject to the Smiths' right to use the easement where it borders the Naderman land.[1]

8. The Naderman estate and Clara Naderman are entitled to use the easement across Smiths' land but may not block the easement at any point so as to prevent Smiths' use of it.

9. The Smiths and Nadermans and their respective successors in interest are jointly responsible for maintenance of the easement to the southwest corner of Smiths' 40–acre parcel. In order that maintenance expenses be divided fairly, each property owner should be permitted on an alternating basis to inspect the road, determine what maintenance is needed, and perform that maintenance. In any year when one owner performs maintenance, the other owner shall reimburse him for one-half (1/2) of the expenses within a reasonable time after receiving receipts for materials and labor. This alternating maintenance shall be done every two years, the Smiths being responsible for maintenance in 1987 and the Nadermans in 1989.

## JUDGMENT

The Court hereby enters judgment against the Plaintiffs and in favor of the Defendants as follows:

1. Lawrence A. Smith and Rebecca M. Smith are the owners in fee simple absolute

---

1. We note that the trial court's conclusions of law numbers 6 and 7 are ambiguous and possibly conflicting. Conclusion 6 declares the Smiths own all the land described in their deed, but fails to specify whether the lane or a portion of the lane is included in their deed. Conclusion 7 declares the Smiths own the lane only to its center, subject to the Naderman's easement, but fails to state whether "the gravel lane" means a portion of its length or all of it from the county road to its end. Because neither the Nadermans nor the Smiths raised this issue in their respective appellate briefs, this issue has been waived by both parties. *Larabee v. Booth* (1984), Ind.App., 463 N.E.2d 487, 491; *Indiana Insurance Co. v. Sentry Insurance Co.* (1982),

Ind.App., 437 N.E.2d 1381, 1387–88. These conclusions are now the law of the case and the parties are left with the option of filing a petition to clarify the judgment in the trial court. The most obvious possible clarification is that the Smiths own all of the lane on the north side of their property, subject to an easement appurtenant in favor of the Nadermans, and that where the lane turns east and south and is bordered by Smith land on one side and Naderman land on the other, the parties own the lane to its center on their respective property subject to an easement appurtenant in the other parties favor. We note that the trial court's Conclusion of Law Number 6 is also potentially conflicting with the Judgment Number 1.

of the following described real estate in Decatur County, Indiana:

The Southwest Quarter of the Southeast Quarter of Section Twenty (20), in Township Nine (9) North, Range Ten (10) East, containing forty (40) acres, more or less; also

Beginning at the half mile post on the north side of Section Twenty-nine (29), Township Nine (9) North, Range Ten (10) East; thence west 10 chains, 89 links to the center of the Millhousen Road; thence west with the center of a County road, 2 chains 84 links; then south 35½ degrees west, 13 chains, 83 links, then south 56 degrees east 16 chains, 68 links, to the Indian boundary line; thence north 56 degrees east 13 chains 82 links, to the east line of the Northwest Quarter of said Section 29; thence north with said east line of said quarter section 17 chains, 50 links, to the place of beginning, containing 43.08 acres, more or less; also

Beginning at the half mile post on the north side of said Section 29 in said Township and Range; thence south 63 degrees east 10 chains; thence south 56 degrees 15' east 5 chains, 42 links, to the Indian boundary line; thence south 56 degrees west 15 chains, 11 links, to the west line of the northeast quarter of said Section; thence north 17 chains, 50 links to the place of beginning, containing 15½

acres, more or less. Containing in the whole tract hereby described 98.58 acres, more or less.

subject to an easement running Millhousen Road in an easterly and southeasterly direction along the boundaries of this property, the Smiths' owning fee simple title to the center of the roadway or easement.

2. The easement across the Smiths' property is for the use of the Smiths and Nadermans for access to their respective properties and shall run with the land and pass to their successors in interest.

3. None of the property owners with rights to use the easement shall interfere with or restrict the adjoining property owners' right to use the easement for access to their property.

4. The Smiths and Nadermans and their successors in interest shall jointly maintain the easement. The two owners shall alternate inspection and maintenance on a biennial basis, Smiths being responsible for maintenance in 1987 and Nadermans in 1989, alternating thereafter. In any year when one owner performs maintenance, the other owner shall reimburse him for one-half (1/2) of the expenses within a reasonable time after receiving receipts for materials and labor.

So ORDERED this 4th day of April, 1986." Record, pp. 84–88. A map of the area at issue is as follows:

## ISSUES

The Nadermans appeal from the trial court's judgment and raise two issues for consideration on appeal. However, we address only the first which is dispositive:[2]

Whether the trial court erred in concluding the Nadermans did not adversely possess the private road and that the Naderman's interest in the private road was an easement.

## DISCUSSION AND DECISION

■ The Nadermans are appealing a negative judgment, that is, in the trial court they were the party bearing the burden of proof and judgment was entered adverse to their position. The standard of review where the case below was tried to the court and not the jury, and the court found against the party bearing the burden of proof, is narrow. A negative judgment may only be attacked as being contrary to law. *Estate of Parlock* (1985), Ind.App., 486 N.E.2d 567, 568. On appeal, we must affirm the trial court's judgment if it is sustainable on any legal theory.

■ In the instant case, the trial court entered express findings of fact at the Nadermans' request. The purpose of special findings of fact is to provide the parties and the reviewing court with the theory upon which the trial judge decided the case in order to preserve the right of review. Special findings of fact entered pursuant to Trial Rule 52(A) of the Indiana Rules of Civil Procedure are binding upon the reviewing court and may not be disregarded. *In Re Marriage of Huth* (1982), Ind.App., 437 N.E.2d 1042, 1046 *citing In Re Marriage of Miles* (1977), 173 Ind.App. 5, 362 N.E.2d 171; *Kizer v. Davis* (1977), 174 Ind.App. 559, 369 N.E.2d 439. This

court recently summarized our standard of review when findings of fact and conclusions of law are requested by one of the parties under Trial Rule 52(A):

"When findings of fact and conclusions of law are requested by the parties, as occurred here, we will not set aside the judgment premised thereon unless it is clearly erroneous, i.e. unless we are definitely and firmly convinced the trial court committed error. The findings must disclose a valid basis for the legal result reached in the judgment, and evidence at trial must support each of the specific findings, with deference given to the court where such evidence conflicts. *Town of Rome City v. King*, (1983) Ind. App., 450 N.E.2d 72. We will not reweigh the evidence nor reassess the credibility of the witnesses before the court but, rather, will affirm if there is sufficient evidence of probative value to support the decision, viewing the evidence most favorable to the judgment and the reasonable inferences drawn therefrom. *Bird v. Delaware Muncie Metropolitan Plan Commission*, (1981) Ind.App., 416 N.E.2d 482."

*Campins v. Capels* (1984), Ind.App., 461 N.E.2d 712, 717. With this standard of review in mind, we turn to the issue raised by the Nadermans.

The Nadermans argue on appeal that "the trial court committed error in determining the interest of the Nadermans in a private road to be an easement, rather than title in fee, through the operation of the statute of limitation of adverse possession",[3] because the Nadermans complied with each and every element required for adverse possession to the disputed gravel lane. Appellant's Brief, p. 28. The Nadermans claim they possessed the private road

**2.** The Nadermans also raise a second issue, claiming the trial court erred in finding that the Nadermans failed to carry their burden of proof on the issue of payment of taxes on the lane when the evidence showed both the Nadermans and Smiths had paid all taxes due and the county was unable to determine to which party the lane was assessed. We need not address this issue because even if the Nadermans had met their burden of proof on this issue, they failed to establish another required element of adverse possession, as discussed above, and so this al-

leged error could not, as a matter of law, constitute reversible error.

**3.** IND.CODE 34–1–2–2(6) provides:

"Upon contracts in writing other than those for the payment of money and including all mortgages, other chattel mortgages, deeds of trust, judgments of Courts of record and for the recovery of the possession of real estate, within ten (10) years ..."

in a continuous, actual, open, visible, adverse, hostile and exclusive manner for more than twenty years, and they provide extended discussion and citation to authority to demonstrate this contention. The Nadermans apparently concede that the Smiths have demonstrated record title to this private lane, Appellant's Brief, p. 32, and argue that an 1867 recorded Indenture in favor of the Naderman's ancestors, Adam and Catherine Hessler, provides the terms of the Nadermans' entry upon the lane, Appellant's Brief, p. 42–43.

As noted above, this court will affirm the trial court judgment if there is sufficient evidence of probative value to support the decision, viewing the evidence most favorable to the judgment. The trial court concluded the Nadermans' interest in a portion of the private lane at issue is an easement.[4] It is elementary property law that the *right to use* the land of another is an easement. Boyer, *Survey of the Law of Property* 381 (2d Ed. 1971); *BLACK'S LAW DICTIONARY* (5th Ed. 1979). The trial court found, and the uncontradicted evidence shows, the only mention of this lane in the public records of Decatur County is an 1867 Indenture, Defendant's Exhibit A, which states:

> "Said John Hessler Sr. and his wife have hereby set apart to heirs forever *the use of a road* sixteen feet wide f [sic] Christian Rhule's corner, through said lands *for the use of* Adam Hessler and George Stahl."

Record, Defendant's Exhibit A. (emphasis added). The Indenture clearly provides the grant of an easement to Adam Hessler which runs with the land.

The Nadermans argue their acts of maintenance over the years, their labor and investment in maintaining and improving the lane, are acts of ownership which were done openly, notoriously, and adversely for more than ten years.[5] However, the Naderman's argument is not supported by the law. An easement may not ripen into fee simple ownership, even after years of use. *Switzer v. Armantrout* (1939), 106 Ind.App. 468, 19 N.E.2d 858. The Nadermans use of this lane was under the 1867 Indenture, which provides for an easement, the use of the lane with permission of the owners. The Nadermans' use of this lane could hardly be construed as hostile or adverse since they have the owner's consent to use through the grant of a permissive easement which runs with the land. A permitted use, within the scope of the granted easement, cannot be adverse so as to ripen into an easement by prescription.[6] *Brown v. Heidersbach* (1977), 172 Ind.App. 434, 360 N.E.2d 614; *Monarch Real Estate Co. v. Frye* (1921), 77 Ind.App. 119, 133 N.E. 156. It follows that a permitted use cannot be adverse so as to ripen into fee simple ownership through adverse possession. If an easement is enjoyed under a deed, there can be no adverse enjoyment until the expiration of the right under the deed. *Brown, supra,* 360 N.E.2d at 618; C.J.S. Easements § 8. Nadermans have presented no argument or facts to demonstrate that their easement had expired.

Easements are created or arise by prescription to fill some need or serve some

---

4. See footnote 1.

5. We must observe, since the Naderman's devote so much of their argument to their adverse and hostile possession, that the evidence was conflicting in this regard. The Blankmans and the Smiths testified that members of their families had used the lane for access to the back 40 acres for ten years prior to 1984, when the Nadermans first hostile act of locking the gate occurred. Thus there was substantial evidence to support the court's conclusion number 2 that the Nadermans failed to show they had exclusive possession of the lane for ten years. Consequently, their claim would have failed even if their interest in the land had not been determined to be an easement.

6. The Nadermans consistently claim they have demonstrated adverse possession. However, the statutory requirements for adverse possession apply to lands in which the adverse possessor has no cognizable legal interest. Here, the facts establish that the Nadermans have a legal interest in the lane, an easement appurtenant granted by the 1867 indenture. Therefore, a more appropriate argument would have been to claim an expanded easement by prescription under our common law, not adverse possession under Indiana statute, *see* 3 Am.Jur.2d *Adverse Possession* § 6, or to claim the easement had expired and therefore title had vested through adverse possession.

432

purpose. That purpose is the focal point in the relationship which exists between the titleholders of the dominant and servient estates. The servient estate is burdened only to the extent necessary to accomplish the end for which the dominant estate was created. Here, the Nadermans, as holders of the dominant estate, cannot subject the Smiths as holders of the servient estate to extra burdens by locking them out of the lane,[7] *Brown, supra,* 360 N.E.2d at 618, *New York Central R. Co. v. Yarian* (1942), 219 Ind. 477, 39 N.E.2d 604, any more than the Smiths can materially impair or unreasonably interfere with the Nadermans' use of the easement, *Brown, supra,* 360 N.E.2d at 618, *Smith v. Holloway* (1890), 124 Ind. 329, 24 N.E. 886.

We find the trial court's conclusions that 1) the Naderman's interest in the lane was an easement, created by grant of the 1867 Indenture; and that 2) the Naderman's failed, as a matter of law, to establish fee simple ownership through adverse possession of the gravel lane, are supported by sufficient evidence.

The judgment of the trial court is affirmed.

SULLIVAN and CONOVER, JJ., concur.

---

**7.** We observe, although both the Nadermans and the Smiths failed to do so in either a motion to correct errors or their respective appellate briefs, that Indiana law provides the Smiths, the servient titleholders, the right to use the gravel lane. There was, therefore, no reason for the trial court to split the title and establish ownership to the center of the lane on the Smith's side to the Smiths and on the Naderman's side to the Nadermans and then grant an easement to each party in the other party's portion of the lane. This classic Solomonic disposition by the trial court is, in effect, an adverse judgment against the Smiths, who have waived any error by submitting the majority of the findings and conclusions the trial court adopted to the trial court

and subsequently failing to file a motion to correct errors or cross appeal. The judgment is adverse to the Smiths because now the Smiths must share the cost of maintaining the private road and they would not have this burden if the easement, or any specific portion of it, was for the sole benefit of the Nadermans. However, we also note that it is unlikely that the trial court's judgment will affect the market value of the Smith's property because the Nadermans were entitled to an easement appurtenant so the Smiths would be unable to convert the lane to another use, even if the Nadermans abandoned their right to use the lane, because this easement is appurtenant and runs with the land.