FILED

Jul 25 2023, 9:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Matthew J. McGovern
Fishers, Indiana

ATTORNEYS FOR APPELLEE

Merritt K. Alcorn
R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Melinda Crowe,<br>*Appellant*,<br><br>v.<br><br>Chris Allen Drenter,<br>*Appellee*. | July 25, 2023<br><br>Court of Appeals Case No.<br>22A-CT-2815<br><br>Appeal from the Jefferson Circuit Court<br><br>The Honorable Donald J. Mote, Judge<br><br>Trial Court Cause No.<br>39C01-2207-CT-549 |

**Opinion by Judge Brown**
Judge Crone and Senior Judge Robb concur.

**Brown, Judge.**

Melinda Crowe appeals the trial court's preliminary injunction ordering that she not use an easement to access the property where she resides. We reverse.

*Facts and Procedural History*

Chris Drenter owns a parcel of real property in Jefferson County, Indiana (the "Drenter Parcel"). Crowe resides on a parcel of real property owned by LJK Investments, LLC, (the "LJK Parcel") located to the north of the Drenter Parcel. Crowe's son is "doing a rent-to-own" of the LJK Parcel. Transcript Volume II at 40.

An "easement for a private road and right-of-way" (the "Access Road Easement") extends from the Drenter Parcel north along the eastern property line of the LJK Parcel, and partially on and across the LJK Parcel, and then northwest across other property to County Road 1400 West. Defendant's Exhibit B. The legal description for the Access Road Easement is found in a deed recorded in December 2010 (the "Drenter Deed") by which Diane Drenter conveyed the Drenter Parcel to Drenter pursuant to a decree of dissolution of marriage. The legal description states, as set forth more completely below, that the Access Road Easement is located "over and across . . . real estate . . . owned by Cecile Bear and Martha F. Bear, said easement and right-of-way being 13 feet on both sides of a center line more particularly described as . . . ."[1] *Id.*

---

[1] The record also includes a deed recorded in November 2015 (the "LJK Deed") by which The Jamison Group, LLC, conveyed the LJK Parcel to LJK Investments, LLC. The record does not include any deed executed by Cecile and Martha Bear or any instruments, other than the Drenter Deed and the LJK Deed, in the chain of title with respect to the Drenter Parcel or the LJK Parcel. A separate "ingress/egress and utility

[4]     The survey admitted as Plaintiff's Exhibit 1 depicts the following:



Plaintiff's Exhibit 1.[2]

[5]     On July 19, 2022, Drenter filed a Complaint for Trespass. He alleged he owns

certain real estate and "[t]he conveyance to [him] of said real estate includes an

---

easement," described in the LJK Deed, extends from County Road 1400 West to the northwest corner of the LJK Parcel (the "Utility and Access Easement"). Plaintiff's Exhibit 2. The Utility and Access Easement does not contain a road.

[2] Drenter testified the Access Road Easement "is marked with a yellow highlighter," his property "is marked with a numeral 1," the property where Crowe lives is "marked as number 2," and the Utility and Access Easement is "marked . . . in a . . . dark green color." Transcript Volume II at 7, 9-10, 14.

easement for a private road and right-of-way over and across certain described real estate." Appellant's Appendix Volume II at 9. He alleged Crowe, without his permission, "continuously uses [his] private road and right-of-way to access her property, all in violation of [his] ownership." *Id.* at 10. Drenter also filed a motion for preliminary injunction requesting a hearing for the purpose of issuing a preliminary injunction "enjoining [Crowe] from [her] use of [his] private road and right-of-way." *Id.* at 12.

[6] On October 25, 2022, the trial court held a hearing at which Drenter appeared in person and with counsel and Crowe appeared in person without counsel. Drenter testified that his property "had a deeded easement going from the county road back to [the] property which is approximately three-eighths of a mile or so." Transcript Volume II at 6. He stated the easement was "specifically for [his] ingress and egress from the property." *Id.* He indicated he hired a surveyor to "make sure . . . everybody is really clear on where exactly the easement is." *Id.* at 7. The court admitted a copy of the survey as Plaintiff's Exhibit 1. Drenter testified, "from day one, [Crowe] has been very hostile and has made multiple threats and verbal assaults and physical assaults and in different ways has blocked access to the easement." *Id.* at 10. He stated "I was bush hogging . . . on my easement and it's 13 feet either side of the center line," "I wasn't clearing that much, just enough to basically drive my truck and trailer," and Crowe "came running out I thought waving a baseball bat -- it might have been a cane -- and jumped up on the . . . forks on the front of the tractor while I was bush hogging, yelling obscenities and threatening me and

basically inviting me to run her over." *Id*. at 11. When asked if he "monitored the . . . unauthorized traffic that is flowing on this road," Drenter replied affirmatively and stated "it's several vehicles, sometimes as many as five or six a day" and "[s]ome heavy trucks, cars, in and out every day." *Id*. He further testified "at one point when I was cutting a few branches on my easement, I was surrounded by at least four or five pit bulls" and "just this last weekend, one of them chased the truck all the way up to the gate of my property." *Id*. at 12. He indicated "there's a lot of wear and tear on the . . . gravel road." *Id*. at 13. When asked if the LJK Parcel had "its own described easement," Drenter answered affirmatively. *Id*. at 14. He testified he ordered gravel from Gammons Excavating, they "had to stop working one day because she came out," and "[t]hey had to pull off and stop working." *Id*. at 18.

[7] Crowe testified on cross-examination that she recalled "the workers from Gammons being on that lane," "[t]here was a backhoe," she asked them for a business card "because the tree that they plowed over hit the neighbor's boat and almost hit the vehicles on our property," she did not threaten anyone, and she "didn't confront them about their presence." *Id*. at 35. She indicated she confronted Drenter "when he was bush hogging" and testified: "I stepped in front of him and said, stop cutting the trees on this side. He keeps cutting the trees over and above that 13 foot, and he won't stop. So I asked him to stop." *Id*. at 36-37. She indicated her son who lived at the property had dogs and there were a lot of stray dogs in the area. When asked who visited the LJK Parcel, she stated "I guess it would be my son and his old lady and her brother and

sister live there" and her "other son." *Id*. at 38.  She also indicated her aunt's vehicle has been there.  When asked "those people use this driveway that belongs to my client," she answered "I don't know that it belonged to him, but yes." *Id*. at 40.  When asked "are you aware of this other easement that connects to your property and connects to county road 1400 west," Crowe replied "[n]ever brought aware of it until I received it in the mailbox." *Id*. When asked "is your son -- does he own this property or is he buying this property," she stated "[h]e's doing a rent-to-own." *Id*.

[8]     The trial court stated a preliminary injunction was warranted.  It stated "issuing an injunction directing [Crowe] to refrain from using the easement that's depicted in Exhibit 1, would not be an undue burden on [her] because there is a rather large easement that is available to [her] allowing them access to their property." *Id*. at 45-46.  Crowe stated: "There is no current easement there to get in and out so how are we getting in and out?" *Id*. at 46.  The court stated "[t]here is clearly an easement that is reflected in Exhibit 1 . . . ." *Id*.  Crowe stated: "There's an easement but no other way out.  It's trees and everything else.  It's not an established road." *Id*.  The court said "[i]t says egress and ingress." *Id*.  Crowe replied: "Yes, but there's no road." *Id*.  She asked "can we have 60 days to get that easement opened up or we can't leave our yard," Drenter's counsel stated "30 days, Your Honor," and the court stated "I will give you 45 days." *Id*. at 47.

[9]     On October 28, 2022, the trial court issued a preliminary injunction stating:

. . . IT IS HEREBY ORDERED DECREED AND ADJUDGED that [Crowe] shall refrain from access or use of the easement belonging to [Drenter] as depicted by the yellow highlighter in Exhibit 1 . . . .

\* \* \* \* \*

Because [Crowe] has requested additional time in order to clear their existing easement, the court shall withhold the enforcement of this injunctive order until December 10, 2022, 45 days from the date of the hearing in this matter.

Effective today, the court orders that [Crowe] refrain from any confrontation, engagement, or communication, directly or indirectly, with [Drenter] and further that any and all dogs at [Crowe's] premises shall be under [Crowe's] control at all times so as to prevent any contact with [Drenter] and his family.

Appellant's Appendix Volume II at 6-7.

[10] On December 14, 2022, Crowe filed an Emergency Motion to Stay Pending Appeal. In an attached affidavit, Crowe stated that she resides in a mobile home on approximately three acres of property, her son has a contract for the purchase of the property, and to her knowledge the land contract has not been recorded and her son does not become the owner until the purchase is complete. She further stated Drenter "claims that I have another easement available to me; however, my son says that this pathway has never been used, is covered with large trees, goes over a dry creek bed that occasionally floods as well [as] over [] a sinkhole, and is completely impassible," and "[t]he only way for me to get to and from my residence is by using the roadway that Drenter is trying to block me from using." *Id*. at 48. This Court granted Crowe's motion

and ordered the trial court to stay the preliminary injunction dated October 28, 2022, pending resolution of this appeal.

*Discussion*

Crowe argues the trial court erred in granting Drenter's motion for preliminary injunction. She maintains Drenter has only a nonpossessory interest in the Access Road Easement and cannot maintain an action for trespass. She argues, "even if Drenter were to try and amend his complaint to add some other theory to block [her] from using the easement, he would not likely succeed for a simple reason: a dominant estate holder has the right to pass over land owned by others, but this right does not include a right to exclude others." Appellant's Brief at 13. She argues easements which give the dominant estate holder the right to exclude others are not favored and maintains "Drenter's deed makes no mention of 'exclusivity' or the right to exclude." *Id*. at 14. She asserts, "even if Drenter had such a right, [she] may have a claim for a prescriptive easement because the roadway in question has been openly and adversely used by property owners as a means of ingress and egress to the public highway for years." *Id*. at 15. She also contends Drenter's action is an unreasonable claim which will landlock her, Drenter had the burden to establish that the threatened injury to him outweighed the threatened harm the grant of injunction may inflict on her, and the harm to her would be immense as, if he were to prevail, she would be unable to leave and enter her property.

Drenter asserts: "Drenter's easement establishes a 'private road and right of way' which, by its plan [sic] and ordinary meaning, gives him the use and

possession of the land to the exclusion of all others." Appellee's Brief at 10-11. He argues Crowe was intentionally interfering with his right to use the Access Road Easement. He further states: "As a procedurally technical matter, Drenter has not yet plead undue interference as a cause of action, [and] his ability to amend the pleadings to conform to the evidence is construed liberally." *Id*. at 13. He also argues: "In the alternative, should the Court determine that the language in the easement 'private road and right of way' is ambiguous, . . . the remedy is remand for further findings from the trial court regarding the meaning of the term as a question of fact." *Id*. at 17.

[13] In reply, Crowe argues: "There is nothing ambiguous about the term 'private road:' it simply does not grant one person exclusive access." Appellant's Reply Brief at 10. She argues "there is absolutely nothing in the use of the term 'private road' which would give Drenter such exclusive use of an easement that passes over the property of upstream property owners that he could prevent those upstream owners from using it" and "Drenter has cited no authority for the proposition that the term 'private road' creates such exclusivity." *Id*. at 11.

[14] We review the trial court's grant or denial of a request for a preliminary injunction for an abuse of discretion. *Gleeson v. Preferred Sourcing, LLC*, 883 N.E.2d 164, 171-172 (Ind. Ct. App. 2008). We will reverse the court's judgment if it is clearly erroneous. *Id.* at 172. Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. *Id.* The power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare

instances in which the law and facts are clearly within the moving party's favor. *Id*. To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence: (1) a reasonable likelihood of success at trial; (2) the remedies at law are inadequate; (3) the threatened injury to the movant outweighs the potential harm to the nonmoving party from the granting of an injunction; and (4) the public interest would not be disserved by granting the requested injunction. *Id.* If the movant fails to prove any of these requirements, the grant of an injunction is an abuse of discretion. *Id*.

[15]     The parties dispute the proper interpretation of the Access Road Easement. As we have discussed:

> It is well established that easements are limited to the purpose for which they are granted. The owner of an easement, known as the dominant estate, possesses all rights necessarily incident to the enjoyment of the easement. The dominant estate holder may make repairs, improvements, or alterations that are reasonably necessary to make the grant of the easement effectual. The owner of the property over which the easement passes, known as the servient estate, may use his property in any manner and for any purpose consistent with the enjoyment of the easement, and the dominant estate cannot interfere with the use. All rights necessarily incident to the enjoyment of the easement are possessed by the owner of the dominant estate, and it is the duty of the servient owner to permit the dominant owner to enjoy his easement without interference. The servient owner may not so use his land as to obstruct the easement or interfere with the enjoyment thereof by the owner of the dominant estate. Moreover, [the] owner of the dominant estate cannot subject the servient estate to extra burdens, any more than the holder of the servient estate can materially impair or unreasonably interfere with the use of the easement.

*Kwolek v. Swickard*, 944 N.E.2d 564, 571 (Ind. Ct. App. 2011) (citing *McCauley v. Harris*, 928 N.E.2d 309, 314 (Ind. Ct. App. 2010) (citations and quotations omitted), *reh'g denied*, *trans. denied*), *trans. denied*.

Generally, an easement for ingress and egress confers only the right to pass over the land rather than the more extensive right to partially control or alter the estate. *Id.* (citing *McCauley*, 928 N.E.2d at 314). However, we must look to the express language of the instrument creating the easement itself to determine the intent of its creators. *Id.* (citing *McCauley*, 928 N.E.2d at 314).

> When construing an instrument granting an easement, the trial court must ascertain and give effect to the intention of the parties, which is determined by proper construction of the language of the instrument from an examination of all the parts thereof. [*W*]*e interpret the grant as a matter of law from the plain and ordinary meaning of the language of the grant.* Particular words and phrases cannot be read alone, as the parties' intention must be gleaned from the instrument as a whole. Any doubt or uncertainty as to the construction of the language of the easement will ordinarily be construed in favor of the grantee.

*Id.* (citing *McCauley*, 928 N.E.2d at 314-315 (emphasis added; citations omitted)). Our standard of review on the question of whether an easement is ambiguous is de novo. *Id.* (citing *Drees Co. v. Thompson*, 868 N.E.2d 32, 39 (Ind. Ct. App. 2007) ("To determine whether the easement grant is ambiguous, we must construe the terms of the written contract, a pure question of law."), *reh'g denied*, *trans. denied*). A document is ambiguous only when reasonable persons find it subject to more than one interpretation. *Id.*

[18] In addition, this Court has held:

> It is settled law that "in a trespass claim a plaintiff must prove that he was in possession of the land and that the defendant entered the land without right." *Aberdeen Apts. v. Cary Campbell Realty All., Inc.*, 820 N.E.2d 158, 164 (Ind. Ct. App. 2005) (citation and quotation marks omitted), *trans. denied*. "We are also mindful of the traditional rule that an action for trespass to real estate 'cannot be maintained for an invasion of a right of way or easement.'" *Ind. Mich. Power Co. v. Runge*, 717 N.E.2d 216, 227 (Ind. Ct. App. 1999) (quoting *State ex rel. Green v. Gibson Circuit Ct.*, 246 Ind. 446, 449, 206 N.E.2d 135, 137 (1965)). "'This rule is based upon the principle that trespass actions are possessory actions and that the right interfered with is the plaintiff's right to the exclusive possession of a chattel or land.'" *Id.* (quoting *Green*, 246 Ind. at 449, 206 N.E.2d at 137).

*Duke Energy of Indiana, LLC v. City of Franklin*, 69 N.E.3d 471, 482-483 (Ind. Ct. App. 2016).[3]

[19] Here, the Drenter Deed, the instrument admitted at the October 25, 2022 hearing which describes the Access Road Easement, states:

QUIT-CLAIM DEED

---

[3] *See also In re RadLAX Gateway Hotel, LLC*, 447 B.R. 570, 575 (Bankr. N.D. Ill. 2011) ("Put generally, a trespass is the unlawful interference with the right of exclusive possession of real property. Therefore, an owner of real property may be liable for trespass over his own land if he has transferred exclusive possession to another. Easements are very seldom the proper vehicle to transfer such exclusive possession. *See* REST.3D PROPERTY, SERVITUDES (2000) § 1.2, com. d. The very idea of an easement that transfers a possessory interest is a contradiction. An easement by definition creates 'a non-possessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement.' REST.3D PROPERTY, SERVITUDES § 1.2. Nevertheless, it appears that a possessory interest easement may sometimes be created. REST.3D PROPERTY, SERVITUDES (2000) § 1.2, com. d. Such exclusive easements, however, are extremely disfavored by the law. 28A C.J.S. EASEMENTS § 221.") (Citations to California authority omitted).

THIS INDENTURE WITNESSETH, that DIANE M. DRENTER, unmarried,

CONVEYS, RELEASES, AND QUIT-CLAIMS

unto CHRIS A. DRENTER, unmarried, . . . the real estate in the County of Jefferson and State of Indiana, described as follows, to-wit:

> Being a part of the Southwest quarter of Section #9, Township 3 North, Range 8 East, Graham Township, Jefferson County, Indiana and being more particularly described as follows: Commencing at the Southwest corner of Section #9, said point being marked by a 1" pipe found . . . . Containing 30.247 acres, subject to all legal right-of-way and any easements of record.
>
> Subject to *an easement for a private road and right-of-way* over and across the following described real estate: All that part of the southeast quarter of the northwest quarter of Section 9, Township 3 North, Range 8 East, owned by Cecile Bear and Martha F. Bear, *said easement and right-of-way being 13 feet on both sides of a center line* more particularly described as follows: Beginning 13 feet west of the S.E. corner of the Cecil[4] Bear property, . . . running thence North 13 feet west of and parallel to the W. property line of the Don Muster property, a distance of 660.0 feet; thence N; 58 deg. 02' W. a distance of 378.0 feet; thence N. 27 deg. 43' W., a distance of 142.2.feet; thence N. 65 deg. 53' W., a distance of 96.6 feet; thence N. 35 deg. 17' W., a distance of 115.3 feet; thence N. 70 deg. 14' W., a distance of 132.0 feet to the center of an existing county road, commonly known as Polk Road.

---

[4] The deed refers to both "Cecile" and "Cecil." Defendant's Exhibit B.

> Subject to any and all easements and/or restrictions of records relative to above described real estate.

Defendant's Exhibit B (emphases added). **(Ex pdf 9-10)**

[20] The parties do not dispute the location of the Access Road Easement relative to the Drenter Parcel or the LJK Parcel, that the easement is located partially on the LJK Parcel, or that both parties use the easement to access their respective parcels from the county road. The parties disagree as to whether Drenter may exclude Crowe from using the Access Road Easement for ingress and egress.

[21] "Generally, exclusivity should be clearly evidenced in the grant of the easement." *Bratton v. Yerga*, 588 N.E.2d 550, 554 (Ind. Ct. App. 1992) (citing *Brown v. Heidersbach*, 172 Ind. App. 434, 442, 360 N.E.2d 614, 620 (1977)). "Absent an affirmative restriction, the titleholder of the servient estate may make any use of the easement which would not materially impair or unreasonably interfere with the use of the easement by the dominant estate titleholder." *Brown*, 172 Ind. App. at 442, 360 N.E.2d at 620 (citing *Smith v. Holloway*, 124 Ind. 329, 24 N.E. 886 (1890)).

[22] Here, the Access Road Easement, by its terms, is not exclusive. The Drenter Deed does not expressly state that the Access Road Easement may be used exclusively by the owner of the Drenter Parcel. We cannot say that the reference to "a private road and right-of-way," Defendant's Exhibit B, over the easement area, without more, amounts to clear evidence of an intent to exclude the servient estate holders and others authorized by the servient estate holders

or that the easement was intended to benefit only the Drenter Parcel and not the other properties which abut the easement area. *See Bratton*, 588 N.E.2d at 554 (holding the grant of a "right of way and easement appurtenant, for use as a roadway and driveway," which provided the appellants' parcels with access to a county road and extended over the property of the appellees as the servient estate holders, did not contain clear evidence of an intent to exclude the servient estate holders and rejecting the appellants' argument that they had the exclusive right to the use of the easement).[5] Having found Drenter does not have the

---

[5] *See also* RESTATEMENT (THIRD) OF PROPERTY, SERVITUDES § 1.2, com. c (2000) ("The term 'exclusive' used in the context of servitudes means the right to exclude others. The degree of exclusivity of the rights conferred by an easement . . . is highly variable . . . . At one extreme, the holder of the easement . . . has no right to exclude anyone from making any use that does not unreasonably interfere with the uses authorized by the servitude. For example the holder of a private roadway easement in a public road has no right to exclude anyone from using the road. At the other extreme, the holder of the easement . . . has the right to exclude everyone, including the servient owner, from making any use of the land within the easement boundaries. In between are easements where the servitude holder can exclude anyone except the servient owner and others authorized by the servient owner (usually called 'nonexclusive easements') and easements where the servitude holder can exclude the servient owner from use of facilities constructed for enjoyment of the easement . . . , but cannot exclude the servient owner from making other uses that do not unreasonably interfere with uses authorized by the servitude (usually called 'exclusive easements'). *Typically, roadway easements are 'nonexclusive' in that the servient owner has the right to use the road* and the right to grant additional easements or licenses for use of the road.") (emphasis added); *id.* at § 4.9, com. d ("Roads and driveways are often intended to be shared by dominant and servient owners."); THE LAW OF EASEMENTS & LICENSES IN LAND § 1:28 (2023) ("Although a grantor may agree not to enter, occupy, or use the area over which the easement runs, such arrangements are looked upon with disfavor because they severely reduce the grantor's ability to enjoy the fee owner's traditional right of possession. Thus, the term 'exclusive' or 'exclusively' is frequently not considered to exclude the grantor, and the transfer is found to create an easement in the grantee, with the grantor retaining the right to use the easement area as long as the grantor does not interfere with the easement holder's rights."), § 1:28 n.6 ("*See . . . Titeca v. State By and Through Dept. of Fish, Wildlife, and Parks*, 194 Mont. 209, 213, 634 P.2d 1156, 1159 (1981) (exclusive easement is not created by use of phrase 'private road'); *Lindhorst v. Wright*, 1980 Ok. Civ. App. 42, 616 P.2d 450, 454 (Ct. App. Div. 1 1980) (right of ingress and egress not exclusive, so owner of servient tenement could make reasonable use of property). *Cf. Triangle Iron Works, Inc. v. Franchise Realty Interstate Corp.*, 524 So. 2d 1145, 1145-1146 (Fla. Dist. Ct. App. 2d Dist. 1988) (easement language excluded third parties, but did not create exclusive easement as between grantor and grantee)."); *id.* at § 8:20 (2023) ("Absent an express provision in a grant or a reservation, an easement is not an exclusive interest in the burdened land.") ; *id.* at § 9:1 ("A person, such as a grantee or a lessee, who succeeds to the possession of the dominant estate is entitled to enjoy any easement appurtenant to that property.").

right to exclude Crowe from using the Access Road Easement to access the property where she resides, we conclude Drenter has not met his burden of showing a reasonable likelihood of success at trial as to the allegations in his complaint for trespass, and we reverse the trial court's entry of the preliminary injunction against Crowe. *See id.* While we reverse the court's preliminary injunction and find that Drenter may not interfere with Crowe's use of the Access Road Easement to access the LJK Parcel while she lives there or subject the LJK Parcel to extra burdens, we note that likewise Crowe may not unreasonably interfere with Drenter's use of the easement. *See Kwolek*, 944 N.E.2d at 571 (citing *McCauley*, 928 N.E.2d at 314).

[23] For the foregoing reasons, we reverse the trial court's entry of a preliminary injunction against Crowe.

[24] Reversed.

Crone, J., and Robb, Sr.J., concur.