WATSON, ET UX. *v.* RALEY, ET UX.

[No. 225, September Term, 1967.]

*Decided June 3, 1968.*

The cause was submitted on brief to HAMMOND, C. J., and MARBURY, BARNES, FINAN and SINGLEY, JJ.

Submitted by *Walter B. Dorsey* for appellants.

Submitted by *Charles A. Norris* for appellees.

FINAN, J., delivered the opinion of the Court.

This appeal is taken from an order of ejectment in the Circuit Court for St. Mary's County. The parcel of land in dispute was part of a larger tract sold at a trustee's sale on June 29, 1962. Theodore Russell died leaving, *inter alia,* land acquired

from Louis R. Springer, by deed dated October 5, 1909; land acquired from Louis R. Springer, by deed dated August 25, 1919, and land acquired from J. Parran Crane, et ux., by deed dated March 18, 1910. There were several heirs and as a result of a partition suit the court appointed a trustee to conduct a sale of these and other Russell lands. The advertisement of sale stated that the property was to be divided into four parcels, "A," "B," "C" and "D." It referred to parcel "B" as being the same property conveyed to Theodore D. Russell by the deed from Louis R. Springer, et ux., dated August 25, 1910; to parcel "C" as being the same land conveyed to Theodore D. Russell by deed from J. Parran Crane, et ux., dated March 18, 1910; to parcel "D" as being the same property conveyed to Theodore D. Russell by Louis R. Springer, et ux., by deed dated October 5, 1909.

At the sale, the trustee produced a map which divided the tract into four separate parcels, denoted by the letters "A" through "D." This map, known as the Koval map, was apparently based on a land use map; in fact, the trustee announced at the sale that the map was not a true representation of the property lines, but was being used for convenience in locating the various parcels. Raley, et ux., purchased a 35 acre parcel of land, which for all intents and purposes was that described in the Springer deed of August 25, 1910, designated as parcel "B" on the Koval map. Watson, et ux., purchased the property contiguous to the Raley tract and designated as that conveyed to Russell by the Crane deed of March 18, 1910 (designated as parcel "C" on the Koval map), and also the property conveyed to Russell by the Springer deed dated October 5, 1909.

On two occasions prior to the sale, Mr. Raley visited the property which he was interested in purchasing for the purpose of viewing the property lines. On these occasions the property lines and monuments were pointed out to him by either John J. Russell or his brother, Theodore D. Russell, who were familiar with the tract and who had a beneficial interest in the proceeds of the trustee's sale. Of special significance to this case is a wire fence and stake line which Raley was told was the southeast boundary of the parcel he was interested in purchasing. Theodore D. Russell, who was apparently the son of the

grantee in the Springer deeds (although the record does not expressly so indicate), testified that the lines he showed Raley were the same as those shown to him by his father. The Koval map, however, showed the southeast boundary of Parcel "B" to be a straight line, whereas the fence and stake line shown to Raley by the Russells prior to the sale would have extended the boundary several acres more to the southeast. The area in dispute, and the subject of this ejectment proceedings, lies between the Raleys' southeast boundary as it appears on the Koval map and as it was shown on the site to Raley. This action was instituted when the Watsons cut timber on the disputed area.

Compounding the confusion regarding the property line is the description in the deed from the trustee to the Raleys. The "being" clause in this deed not only refers to the tract conveyed as "Part of Bean's purchase or Hickory Bottom, and being the same conveyed to Theodore D. Russell by deed from Louis R. Springer, et ux., dated August 25, 1910 * * *;" but also recites, "this parcel is designated as Parcel "B" on a map made by Thomas R. Koval and filed in the aforementioned proceedings." Thus, the description in the deed itself contains irreconcilable inconsistencies.

The issue, therefore, involves the inconsistency between map and deed reference in the same clause of the Raley deed. Also, the same conflict appears in the Watson deed because the deed reference conflicts with the boundaries of Parcel "C" as it appears on the Koval map, incorporated by reference in the Watson deed.

The normal rule that, in construing deeds, the former of two repugnant clauses will control does not bear on the decision in this case. Where the inconsistency occurs within one clause of the deed, all parts of that clause are accorded equal weight. See, *Logsdon v. Brailer Mining Co.,* 143 Md. 463, 477, 123 A. 113, 118 (1923); *Zittle v. Weller,* 63 Md. 190, 196 (1885). Under such circumstances, the only rule of construction to which the Court adheres, and that followed by Judge Mathias in the court below, is that the intentions of the parties should prevail. *Brown v. Whitefield,* 225 Md. 220, 169 A. 2d 920 (1961); *Adams v. Parater,* 206 Md. 224, 111 A. 2d 590 (1955). In determining

the extent of the interest conveyed, we may view the language employed in light of all of the facts and circumstances of the transaction. *Green, Trustee v. Eldridge,* 230 Md. 441, 187 A. 2d 674 (1963) ; *Weiprecht v. Gill,* 191 Md. 478, 62 A. 2d 253 (1948) ; 2 Tiffany, *Real Property* § 444 (2nd Ed., 1920) ; 26 C. J. S., *Deeds* § 84 (1956).

After this dispute arose, Raley had an independent survey made of his property. The surveyor testified that in arriving at the boundary line he did not rely on the erroneous Koval map, or on the vague description in the Raley deed, which contained no courses and distances. Instead, he relied on the various descriptions and deeds of the properties east and west of the Raley parcel. In this manner he prepared a survey map which, for all intents and purposes, conformed with the property lines as shown Raley by the Russells prior to the sale.

In the instant case we are convinced that the Raleys, the purchasers of lot "B," intended to purchase all the land pointed out to Mr. Raley by the Russell brothers, and later verified by the formal survey. The similarity between those boundaries, and between them and the land conveyed by the deed referred to in the Raley deed, presents strong circumstantial evidence in favor of the appellees' argument. In addition, the statement of the trustee that the Koval map was being utilized solely for the purpose of locating generally the various parcels being sold establishes some evidence as to the intention of the trustee.

The lower court applied the correct rule of law to the evidence in this case and we do not think that the conclusions which it reached concerning the evidence were clearly erroneous. Rule 886 a.

*Order affirmed with costs.*