**Loren V. LIEN, et al., Appellants,**

**v.**

**Virginia LORAUS, David C. Parker, et al., Respondents.**

**No. C5–86–1741.**

Court of Appeals of Minnesota.

April 7, 1987.

Review Denied June 9, 1987.

Wayne H. Olson, Olson, Gunn and Seran, Ltd., Minneapolis, for Loren V. Lien, et al.

John W. Person, Breen & Person, Ltd., Brainerd, for Virginia Loraus.

James M. Gammello, Carlsen, Greiner & Law, Pequot Lakes, for David C. Parker, et al.

Heard, considered and decided by POPOVICH, C.J., and SEDGWICK and CRIPPEN, JJ.

## OPINION

POPOVICH, Chief Judge.

This appeal is from a judgment declaring appellants' pedestrian walkway easement from a road to a lake does not include a dock's installation and use. Appellants claim trial court error because (1) the easement is ambiguous and (2) extrinsic evidence shows the parties intended the easement's full reasonable use to include docking privileges. We affirm as modified.

## FACTS

In 1973, respondent Virginia Loraus purchased lakefront lot 4, block 1 of Grimsdale's Gull Estates subject to

a ten (10) foot easement for a pedestrian walkway existing on the South line of said Lot Four (4) from Springdale Drive to the Lake running in favor of the owners of back lots Eight (8), Nine (9), and Ten (10).

In 1982, appellants Loren and Delores Lien acquired lot 8 and appellants Roland and Diane Markens acquired lots 9 and 10. Lot 10 was subsequently conveyed to respondents David and Mary Ann Parker.

In 1985, respondents Loraus and Parker entered into an agreement authorizing Parker to construct a dock lakeward from the easement. When appellants requested to share the dock's use, respondent Parker refused. Appellants then brought a declaratory judgment action to establish their easement includes the right to construct their own dock or share in the use of respondent Parker's dock. Appellants also sought removal of a gated fence respondent Loraus had placed across the walkway.

Trial was held on June 3, 1986. Those testifying included appellants, respondents

Loraus, and Ralph Lee, the real estate broker who assisted the since deceased Clarence Grimsdale in platting Grimsdale's Gull Estates. Lee testified Grimsdale intended to provide back lot owners access to the lake for all purposes. The easement refers to a "pedestrian walkway" only because the bank was too steep to allow motorized traffic. Appellants also introduced the sales brochure advertising each lot's access to the lake for boating.

On July 15, 1986, the trial court issued its findings of fact, conclusions of law, order for judgment and judgment. Regarding the easement's ambiguity, the court specifically found:

That the said easement * * * is not ambiguous as to either its location or its extent in that it provides a sufficient legal description with which to locate the easement, and it provides words of common and ordinary meaning with which to define the extent of the easement granted. The words "pedestrian" and "walkway" refer to a use limited to people traversing the easement described on foot without allowance for the construction of any structure such as a dock, and without allowance for the use of any vehicle in connection with said easement, be it a land or marine vehicle. Any use, however, that can be made of the lake by pedestrians at the water's edge without the use of structures or vehicles of any type, such as fishing and swimming, is included within the terms of said easement.

The court also found:

That although evidence was received, subject to objection, on both sides of the issue as to the intent of the easement, this Court finds that there is no ambiguity as claimed so as to allow such parol evidence, and that furthermore, such parol evidence as offered lacked sufficient credibility and weight so as to allow this Court to find that there was a mutual contract or agreement to encumber said Lot 4 with an easement to any greater extent than hereinabove stated.

The court further found the fence and Parker's dock obstructed appellants' use under the easement and ordered the fence removed. The dock was also removed. Appeal is taken from the July 15, 1986 judgment. Respondents Parker chose not to participate in the appeal.

### ISSUES

1. Did the trial court err in finding the pedestrian walkway easement unambiguous, precluding extrinsic evidence to show the parties' intent?

2. Is the trial court's finding the parties did not intend the easement to include a dock's installation and use clearly erroneous?

### ANALYSIS

1. When an easement is by express grant, its extent depends entirely upon the construction of the terms of the grant. Only when ambiguities exist may the circumstances surrounding the grant be considered. *Hwy. 7 Embers, Inc. v. Northwestern National Bank*, 256 N.W.2d 271, 275 (Minn. 1977) (citations omitted).

Appellants claim the easement language is ambiguous because it does not define the easement's extent at the water's edge. In *Farnes v. Lane*, 281 Minn. 222, 161 N.W.2d 297 (1968), the Minnesota Supreme Court addressed whether an easement for a "right-of-way" to a lake included by implication the right to install a dock. The court stated:

The grantee of an easement or right-of-way to the lake may or may not be entitled to install and use a dock extending from the way into the lake, depending on the circumstances of the particular case. If the easement is granted in terms which clearly and specifically allow or deny this use, the language of the instrument creating the right will control.

Where, as here, the easement for a way is granted in general terms, *no reference being made to the installation*

or use of a dock, the uncertainty must be resolved by applying the general principles of law relating to the construction of ambiguous writings. In addition to the rules which apply generally as aids in the ascertainment of intent in the use of words, *extrinsic evidence may be considered* relating to the facts peculiar to the particular easement involved * * *.

*Id.* at 225–26, 161 N.W.2d at 300 (emphasis added) (footnote omitted). The *Farnes* court also explained the role of riparian rights in determining the issue. The court stated:

> [A] finding that the [easement owners] are not riparian owners does not settle the question of whether they are entitled to install and use a dock in proper enjoyment of their easement for right-of-way purposes.

*Id.* at 227, 161 N.W.2d at 301. The court concluded the easement was ambiguous and remanded for further consideration of extrinsic evidence regarding the parties' intent. *Id.*

■ We agree the easement in this case, granted in general terms as in *Farnes*, is ambiguous. Although this easement specifically created a "pedestrian walkway," it is indistinguishable from the *Farnes* "right-of-way" easement because both refer to traveling to or from the lake. "Pedestrian" limits only the mode of travel. *See, e.g., Badger v. Hill*, 404 A.2d 222, 225 (Me.1979) ("pedestrian right of way" easement limits only mode of passage).

■ 2. Unlike the *Farnes* court, however, the trial court considered extrinsic evidence. It specifically found the parties did not intend to extend the easement to include use of structures or vehicles of any type.

It is well established upon review of factual findings

> such findings will not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

*Peterson v. Johnston*, 254 N.W.2d 360, 362 (Minn.1977).

An easement "should not be extended by legal construction beyond the objects originally contemplated or expressly agreed upon by the parties." *Thompson v. Germania Life Insurance Co.*, 97 Minn. 89, 92, 106 N.W. 102, 104 (1906). The *Farnes* court directed its trial court on remand to consider extrinsic evidence to determine whether:

> the grantor intended to permit a use of the easement which was reasonable under the circumstances and the grantee expected to enjoy the use to the fullest extent consistent with its purpose.

*Farnes*, 281 Minn. at 226, 161 N.W.2d at 300 (footnote omitted).

Relying on Lee's testimony, appellant claims the grantor intended to permit the easement's use for all purposes, including a dock's installation and use. The trial court, however, found respondent met her burden by showing appellant's contemplated use was excessive. The parties' intent turns on the issue of credibility, and the trial court is the "sole judge of the credibility of witnesses and may accept all or only part of any witness' testimony." *City of Minnetonka v. Carlson*, 298 N.W.2d 763, 767 (Minn.1980). The court's finding that the parol evidence as offered lacked "sufficient credibility and weight" to show a mutual agreement to use and construct a dock is not clearly erroneous.

■ We find merit, however, in appellants' argument the court's interpretation of the easement is too restrictive. Although the court specified the easement's use at the water's edge for fishing and swimming, the court prohibited use of all structures and vehicles to facilitate that use. At oral argument, respondent conceded she would allow railings or steps necessary to maintain reasonable use. We therefore modify the judgment to include use of those structures and vehicles such as wheelchairs, baby carriages, and watercraft which are transportable on foot.

## DECISION

Although the extent of appellants' pedestrian walkway easement is ambiguous, the trial court's finding regarding the parties' intent limiting the easement is not clearly erroneous. We modify the court's restrictions, however, to facilitate the easement's full reasonable use.

Affirmed as modified.

CRIPPEN, J., dissents.

CRIPPEN, Judge, dissenting.

Appellants and respondents Parkers own a "pedestrian walkway" easement over a 10-foot strip at the south end of respondent Loraus' lot. The trial court decided these easement owners are prohibited from "construction of any structure such as a dock." I agree with the majority's view that the easement owners are entitled to construct railings, steps, or other structures necessary to maintain reasonable use. I also agree with the decision of the majority to draw an exception for "watercraft transportable on foot" and certain other vehicles used on land. Appellants do not appear to demand any further extension of the right to take vehicles across the easement.

I disagree, however, with the majority's decision to affirm the trial court's prohibition against the construction or use of a dock. Appellants concede there should be no permission to construct more than one dock and that dock construction and usage depends upon a cooperative agreement between all the owners who enjoy the easement.

Believing that further trial court proceedings are mandated by established law, I respectfully dissent.

It must be assumed in a case such as this that the grantor of the easement "intended to permit a use of the easement which was reasonable under the circumstances" and that the grantee of the easement "expected to enjoy the use to the fullest extent consistent with its purpose." *Farnes v. Lane,* 281 Minn. 222, 226, 161 N.W.2d 297, 300 (1968) (footnote omitted). In *Farnes,* the supreme court found "these general rules" require that the trial court resolve ambiguities by considering evidence on the effects of use of structures, the customs of area landowners to permit structures for non-lakeshore sites, and the prior patterns of conduct of the owners affected by use of the easement. *Id.* at 226, 161 N.W.2d at 300–01. Because answers to questions could not be made from the record in *Farnes,* the supreme court reversed and remanded the case for further attention of the trial court.

Here the trial court failed to proceed on the *Farnes* assumption by trying to identify "reasonable" uses. Instead, it identified a presumed scope of easement rights based on its construction of "pedestrian walkway." The court found:

> The words 'pedestrian' and 'walkway' refer to a use limited to people traversing the easement described on foot without allowance for construction of any structure such as a dock, and without allowance for the use of any vehicle in connection with said easement, be it a land or marine vehicle.

As to evidence on the meaning of easement language, the trial court found only:

> [S]uch parol evidence as offered lacked sufficient credibility and weight so as to allow this Court to find that there was a mutual contract or agreement to encumber said Lot 4 with an easement to any greater extent than hereinabove stated [a reference to the trial court's definitions of the easement language].

In other words, the trial court examined extrinsic evidence with the limited aim of identifying any agreement that would add to and enlarge an agreement it found to be unambiguous.

I agree with the majority that it was error to view the easement in this case as unambiguous. The conclusion of the majority is compelled by *Farnes.* It follows, however, that we cannot affirm the trial court findings of fact.

A trial court finding "shall not be set aside unless clearly erroneous." Minn.R.

Civ.P. 52.01. Applying this rule, the Minnesota Supreme Court has declared:

A finding of the trial court is not to be disturbed unless clearly erroneous, either upon a clear demonstration that it is without substantial evidentiary support or that it was induced by an erroneous view of the law.

*Pettibone Minnesota Corp. v. Castle*, 311 Minn. 513, 514, 247 N.W.2d 52, 53 (1976). The trial court's findings were induced by an erroneous view of the law, its conclusion that the language of the easement agreement was unambiguous. The court examined extrinsic evidence only for the purpose of learning whether there was an agreement for greater easement rights than those it had defined. The law of the case required a different assumption, one that easement uses were to be as is "reasonable under the circumstances." *Farnes*, 281 Minn. at 226, 161 N.W.2d at 300. The court made no findings on reasonable uses for the easement in this case and addressed none of the considerations delineated in *Farnes*. Under the circumstances, we should remand for further findings. As in *Farnes*, the evidence does not address several questions, and more evidence should be heard.

Trial court findings are needed to indicate the adverse effects, if any, of using a dock adjoining appellants' easement. This finding should indicate the effects of boat storage connected with dock construction, but should also determine any adverse consequences of dock construction without boat mooring rights. Although appellants seek both dock construction and boat mooring rights, there is evidence that the dispute between the parties first arose shortly after one of the appellants sought to take children onto a dock then in place at the site, not for boating purposes, but so the children could fish. Moreover, the present decision permanently establishes rights connected with ownership of these lots, so that a decision against dock construction affects prospective owners who wish to use a dock solely for fishing or swimming purposes. It is significant that respondent testified she had no objection to fishing and swimming in the water adjoining appellants' easement. Witness Lee testified that the owner at the time the parcels were platted anticipated the construction of a dock adjoining the easement.

The *Farnes* case indicates attention should be given to identifiable area customs, if any, regarding the rights of non-lakeshore sites. In addition, the court should determine the importance of an agreement of respondent in 1985 that would permit on "a trial basis" the construction of a dock on the site by respondents Parkers, who owned one of the non-lakeshore sites. The license for that construction was granted "on the basis of the Licensee's [the Parkers] ownership and possession of Lot 10, Block 1 [a nonlakeshore site]."