**Robert W. HUTNER, Appellant
(Plaintiff Below),**

v.

**Susan KELLOGG, Donald Orbaugh and
Georgia Orbaugh, Appellees
(Defendants Below).**

**No. 43A03–9007–CV–256.**

Court of Appeals of Indiana,
Third District.

Dec. 20, 1990.

Edward J. Liptak, Miller Carson & Boxberger, Fort Wayne, for appellant.

Mark A. Armstrong, Hartzog, Barker, Hepler & Saunders, Goshen, for Susan Kellogg.

Richard K. Helm, Rockhill, Pinnick, Pequignot, Helm & Landis, Warsaw, for Donald and Georgia Orbaugh.

STATON, Judge.

Robert Hutner appeals the trial court's judgment against him in his action for permanent injunction. Hutner sought to prohibit Kellogg and the Orbaughs, dominant tenants with an express easement to the shores of Lake Wawasee, from placing and using a pier beyond the shoreline where the easement terminates. Hutner's sole allegation of error is that the determination by the trial court was contrary to law.

Affirmed.

The evidence was presented to the trial court upon stipulated facts in lieu of trial testimony. Those facts indicate that in 1941, Edwin and Marcella Scheele conveyed the parcel of property (the servient tenement) ultimately purchased by Hutner in 1983. The Scheeles reserved a five foot wide strip of land running along the east side of the servient tenement "for ingress and egress to and from the roadway to the water's edge of the Lake."

From the date the easement was created, and with few exceptions each year thereafter, the Scheeles and subsequent dominant tenants have made use of a pier, located at the point the easement reaches the shoreline, for swimming, sunbathing, and docking boats. The pier is installed in the Spring and removed each Fall. Until this action was filed, all parties operated on the assumption that the dominant tenants enjoyed riparian rights[1] connected with the easement.

---

1. Strictly speaking, property owners with land abutting a river or stream acquire riparian rights, while those with shoreline on a lake or pond acquire littoral rights. However, many jurisdictions use the term riparian to include both classes of ownership. *See* 78 *Am.Jur.2d Waters* § 51 n. 32 (1975).

■ Our review is limited by the fact that the trial judge entered special findings. Therefore, we will not set aside the judgment premised thereon unless we are definitely and firmly convinced that the trial court committed error. *Naderman v. Smith* (1987), Ind.App., 512 N.E.2d 425, 430 (quoting *Campins v. Capels* (1984), Ind.App., 461 N.E.2d 712, 717, *trans. denied*). The findings must disclose a valid basis for the legal result reached in the judgment, and evidence at trial must support each of the specific findings, with deference given to the court where such evidence conflicts. *Id.* Inasmuch as the facts were stipulated to, we perceive no evidentiary conflicts.

■ The trial court found that, although the deed did not expressly reserve riparian rights, the Scheeles intended to reserve the right to place a pier in the lake, having relinquished their interest in shoreline property. Hutner asserts that because the deed is unambiguous, the trial court impermissibly resorted to an examination of the grantors' intent, citing *Klotz v. Horn* (1989), Ind.App., 537 N.E.2d 509 and *Brown v. Heidersbach* (1977), 172 Ind.App. 434, 360 N.E.2d 614, *reh. denied, trans. denied.* However, in a recent case overturning the *Klotz* decision, our supreme court determined that the language "access to [the lake]" is sufficiently ambiguous to allow inquiry into the surrounding facts and circumstances. *Klotz v. Horn* (1990), Ind., 558 N.E.2d 1096 (*Klotz II*).

In *Klotz II*, the supreme court examined the *Brown* decision, *supra*, and noted that the *Brown* court resorted to extraneous circumstances to arrive at its decision as well. The *Klotz II* court approved of the following language from *Brown:*

> An instrument creating an easement must be construed according to the intention of the parties, as ascertained from all facts and circumstances, and from examination of all its material parts.

*Brown, supra*, 172 Ind.App. at 441, 360 N.E.2d at 621 (quoted in *Klotz II, supra*, at 1099).

The fact that the easement in this case was created by reservation, rather than by grant as in *Brown* and *Klotz, supra*, lends an even greater degree of ambiguity to the deed. As the Scheeles were once the owners of the shoreline, and subsequently conveyed this portion of their property excepting the easement, the extent of the easement possesses an element of uncertainty. As one scholar observed:

> The extent to which circumstances need to be resorted to as an aid to the interpretation of language depends in part at least upon the completeness of expression contained in the language. The more complete the expression, the less resort there need be to the circumstances. As the language becomes less complete the greater becomes the need for resort to the circumstances under which it is used.

2 *American Law of Property* § 8.65 (A.J. Casner ed. 1952). *See also Badger v. Hill* (1979), Me., 404 A.2d 222; *Hudson v. Lee* (1964), Okl., 393 P.2d 515; *Farnes v. Lane* (1968), 281 Minn. 222, 161 N.W.2d 297 (granting riparian rights to easement holders absent express grant in deed).

The trial court properly considered the fact that the original grantors retained possession and use of the dominant estate, and immediately after the conveyance installed the pier at the end of their easement. The pier has been installed and in use on a seasonal basis for approximately fifty (50) years. The undisputed evidence also reveals that until this action was filed, all parties believed that riparian rights had been reserved in the deed. This evidence raises an inference that the Scheeles intended to reserve such rights. Indeed, it is hardly conceivable that the Scheeles would relinquish their shoreline property without intending to reserve riparian rights in the easement retained for access to the lake.

Because the facts and circumstances surrounding the reservation of the easement support the findings of the trial judge, and because the findings disclose a valid basis for the judgment, we are not convinced that an error has been made.

Therefore, the trial court is affirmed.[2]

BUCHANAN and GARRARD, JJ., concur.

---

2. Because we affirm the trial court judgment, there is no need to address the Appellee's con- tentions that they acquired riparian rights by prescription or through adverse possession.