712 A.2d 1072

**Paul A. GWYNN, et al.**

v.

**Dorothy V. OURSLER, et al.**

**No. 1591, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

July 10, 1998.

Becker, J., specially assigned, concurred and dissented and filed opinion.

494

Robert L. Gray, Prince Frederick and Frank B. Haskell, Upper Marlboro, for appellants.

Carlton M. Green (Green, Leitch & Steelman, on the brief), College Park, for Oursler.

Richard C. Daniels (Daniels & Daniels, on the brief), College Park, for the Gwynns.

Argued before EYLER and SONNER, JJ., and LOUIS A. BECKER, Judge (specially assigned).

SONNER, Judge.

This is an appeal from the Circuit Court for Calvert County alleging that the court incorrectly denied the existence of a riparian right-of-way claimed by appellants across the land of appellees. Following a bench trial, the court (Rymer, J.) determined that those who deeded the easement in 1957 across two waterfront parcels of land did not intend to convey riparian rights that would entitle appellants to erect a pier at the end of the easement and, further, that a right-of-way to the shore of a navigable river does not, by implication, create riparian rights. We agree with the trial court and, accordingly, affirm.

This dispute involves two parcels of property along the Patuxent River owned by appellants, whom we refer to as the Gwynn family, and appellees, whom we refer to as the Oursler family. The families are related by marriage. In particular, the dispute concerns the access to a pier for the present day owners of several lots created in 1957 by Thomas S. Gwynn, Sr., one of the original family owners. In 1926, he, together with some other close relatives, purchased a parcel of land for the family to use for weekends and vacations. The Oursler family purchased the adjoining property. Over the years, the relatives of both families used the properties for fishing, boating, swimming, and crabbing, in harmony and without difficulties or recorded unpleasantness. In 1957, when the original Gwynn purchasers divided the land among some of the members of the family, they and the Ourslers, by deed, created a perpetual right-of-way along the property line between their lots, stretching away from the Patuxent River to the end of their properties and crossing over Lloyd Bowen Road. The four lots all share a border on the easement. Two of the lots created by the Gwynns are located on the west or "river side" of the road, and two lots are on the east side of the road. The right-of-way, as portrayed on a plat that accompanied the deed, shows a straight 20–foot–wide strip running along either side of the Oursler and Gwynn properties. The description of the right-of-way contained in the deed reads in part as follows:

Said 20 foot right-of-way to lie 10 feet on each side of said divisional line and to run from the easterly outline of said divisional line and to run from the easterly outline of said two I acre tracts, described aforesaid, to the shore of the Patuxent River. Said right-of-way to be for the joint use of the parties in interest hereto, their heirs and assigns, for ingress and egress only, . . .

At the time the deed was executed, there was a dock or pier located at the end of the right-of-way that extended for several yards into the Patuxent River. Over the years, hurricanes destroyed the dock and, on each occasion, the families rebuilt it, but not ever again at the original location at the

terminus of the easement. Beginning in the 1980's, the families began to quarrel about the use of the dock and, in 1990, when one of the Ourslers threatened to remove the dock, the Gwynn family obtained an injunction to prevent her from doing so. The Gwynn family dismissed the injunction voluntarily when they believed they had reached a settlement over the use of that dock, but Ms. Oursler unilaterally removed it and built another, far removed from the existing right-of-way. When the Gwynn family applied for a permit to construct a new pier where the right-of-way ended at the Oursler property and where one had been located in 1957 when the Gwynn family and the Ourslers had created the easement, the attorney for the Board of County Commissioners for Calvert County required the Gwynn family to obtain a decision from the circuit court before they could receive the permit. All of this led to the filing of the suit and the court decision that is the subject of this appeal.

The contention of appellees is that the deed created only the right of the owners of the subdivided lots to access Lloyd Bowen Road, while appellants maintain that the right-of-way first was intended to give them access to a dock on the Patuxent River and, in any event, all easements to navigable rivers carry with them an implied riparian right to such access. The issues, then, can be stated on appeal as:

I. Does an easement for ingress and egress only to the shore of a navigable river entitle the owner of the dominant estate to construct a pier at the end of the easement?

II. Was the trial court's evidentiary finding that the deed did not intend that the right-of-way include a pier clearly erroneous?

A riparian owner is one who owns land bordering upon, bounded by, fronting upon, abutting, or adjacent and contiguous to and in contact with a body of water, such as a river, bay, or running stream. *Owen v. Hubbard*, 260 Md. 146, 271 A.2d 672 (1970). Those who have riparian rights may make such structures as wharves, piers, and landings that are

connected to the waterfront and built out into the water. *Hess v. Muir,* 65 Md. 586, 598 5 A. 540 (1886).

We must first consider whether appellants have riparian rights, that is, whether, in Maryland, a grant of an easement to a navigable river necessarily carries with it riparian rights, which, in the context of this case, would include the right to construct, use, and maintain a wharf or a pier. There appears to be no Maryland case directly on point, and indeed, although appellants have cited several decisions from foreign jurisdictions that bear upon the issue, none appears to have decided the precise issue framed by this case. In case law not cited by appellants, however, we find that other jurisdictions have addressed similar issues.

The Supreme Court of Minnesota, for example, addressed an almost identical issue in *Farnes v. Lane,* 281 Minn. 222, 161 N.W.2d 297, 299 (1968), when it considered whether "a private easement appurtenant for a right-of-way to a lake include[s] by implication the right to install a dock ..." That court concluded that the grant of the easement does not necessarily "make the grantee of the easement a riparian owner entitled to exercise riparian rights." In *Lien v. Loraus,* 403 N.W.2d 286, 289 (Minn.Ct.App.1987), the Minnesota Court of Appeals, relying on *Farnes,* reiterated that a pedestrian walkway to a lake may or may not entitle a grantee the right to install a dock. That right depends on the circumstances of the particular case.

In *Hudson v. Lee,* 393 P.2d 515 (Okla.1964), relied on by appellants, the Supreme Court of Oklahoma, in deciding that a deed conveying cabin sites and a right of ingress or egress over a narrow strip of land to the waterfront established docking rights on the waterfront, did not find that the easement, alone, established docking rights. Instead, the court examined the deed, found that it was ambiguous as to the intent of the makers, and affirmed the admission of parol evidence by the trial court to determine that the intent of the parties included conveying riparian rights. *Id.* at 520. The Supreme Judicial Court of Maine also faced the question of

whether a deed granting a pedestrian right-of-way to the York River gave the grantee a right to place a dock at the end of the right-of-way in *Badger v. Hill,* 404 A.2d 222 (Me.1979). That court determined that a right-of-way that runs to the water does not per se establish a right to construct a dock, but a court, after finding that the language of the deed is ambiguous about the full scope of the use to be made of the right-of-way, may resort to extrinsic evidence to determine the purpose for which access to the river was given. *Id.* at 226. When again faced with a similar issue in *Rancourt v. Town of Glenburn,* 635 A.2d 964 (Me.1993), the Supreme Judicial Court of Maine relied on *Badger* and applied the same analysis, again stating that a deed granting a right of ingress and egress, alone, did not indicate if a right to place a dock at the end of the right-of-way existed.

We note that none of the cases cited by appellants expressly states that the mere granting of a right-of-way, allowing the grantee the right of ingress and egress to a body of water, establishes in the grantee the right to construct a pier or dock. Instead, the courts in those cases either examined the deed and found that the deed expressly permitted docking privileges, *Boydstun Beach Association v. Allen,* 111 Idaho 370, 723 P.2d 914 (Ct.App.1986) and *Cabal v. Kent County Road Comm'n,* 72 Mich.App. 532, 250 N.W.2d 121 (1977)(docking privileges granted because deed expressly allows boating privileges), *Maxwell v. Hahn,* 508 N.E.2d 555 (Ind.Ct.App.1987) (deed created easement for use of lake approaches), or found that the parties agreed that the grantees had riparian rights, including the right to construct docks, *Lanier v. Jones,* 619 So.2d 387 (Fla. 5th DCA 1993). In the remaining cases cited by appellants, the courts found that the deeds were ambiguous about the use of the easement and therefore required trial courts to admit parol or extrinsic evidence to determine the intent of the parties when they created the easement. *Briggs v. DiDonna,* 176 A.D.2d 1105, 575 N.Y.S.2d 407 (1991); *Hutner v. Kellogg,* 563 N.E.2d 1338 (Ind.Ct.App.1990); *Klotz v. Horn,* 558 N.E.2d 1096 (Ind.1990).

**500** 

█ We therefore find, as other courts have, that the right-of-way to a body of water, alone, does not entitle the grantee the right to construct a dock or a pier. Instead, once a court is faced with a deed granting a right-of-way to a body of water, the court must undertake a two-part analysis to determine whether the grantor intended to allow the grantee the right to construct a pier or dock. First, the court must examine the deed alone to determine whether, on its face, it grants or denies the riparian rights. If the deed itself contains an express grant or denial of that intent, the language of the deed controls. *Buckler v. Davis Sand and Gravel Corp.*, 221 Md. 532, 158 A.2d 319 (1960)(when a deed is clear upon its face, construction of the deed must come from the four corners of the instrument alone). If, however, the deed is ambiguous as to the intent of the grantor, the court must undertake the second part of the analysis and may consider parol or other extrinsic evidence to discover the grantor's intent. *See Watson v. Raley*, 250 Md. 266, 268–69, 242 A.2d 488, 489–90 (1968).

█ The deed in this case is completely silent about piers or wharves, and makes no mention at all about riparian rights. It mentions only a right-of-way for ingress and egress and does not describe whether the ingress and egress is to access the river, to access the road, or to access both. Often, when the deed grants an easement providing for "access" to a body of water or ingress and egress from a roadway to a water's edge, as in this case, courts have found that the language of the deed is ambiguous as to the parties' intent to allow docking privileges. *Klotz*, 558 N.E.2d 1096; *Badger*, 404 A.2d 222; *Hudson*, 393 P.2d 515; *Farnes*, 161 N.W.2d 297; *Hutner*, 563 N.E.2d 1338; *Briggs*, 575 N.Y.S.2d 407; *Lien*, 403 N.W.2d 286; *Rancourt*, 635 A.2d 964. As the Supreme Court of Minnesota pointed out, the question of whether the easement for access entitles the grantee the right to install a dock depends on the law relating to the "extent and reasonableness of the use of a private right-of-way in the exercise of an easement." *Farnes*, 161 N.W.2d at 300. "Where, as here, the easement for a way is granted in general terms . . . the

uncertainty must be resolved by applying the general principles of law relating to the construction of ambiguous writings [including extrinsic evidence]," *id.*, to discern the intentions of the grantor.

Apparently, because the trial judge regarded the deed's silence about riparian rights as an ambiguity, he properly allowed the Gwynns and the Ourslers to introduce evidence to assist in resolving just what the easement intended the parties to access. At trial, the court listened to several witnesses who recalled the family histories over several generations of use and testified about who paid for the repairs, who constructed the various docks after they were destroyed by hurricanes, where the docks were located, and what various family members had written in their diaries. The trial judge also considered deeds that the Gwynn family members had used over the years to transfer the ownership of the land among themselves, as well as a number of exhibits, photographs, and plats.

At the close of all of the evidence, the court concluded that the right-of-way was intended only to provide access to the various owners of the dominant estates to Lloyd Bowen Road. In ruling orally from the bench, the judge stated, first, that he permitted the parol testimony, even though he thought that the intention of the parties was "fairly clear in the deeds." He said, "I listened very carefully, [and] I couldn't find in the testimony anything that would make me feel or make me find that there is—that it was the intention that the pier be part of anything."

At the time of the creation of the easement in 1957, it may indeed have been the wish of both of the related families, who have had a long history of friendship and shared pleasant experiences, to have provided in the easement for riparian rights to assure equal and fair treatment of the descendants and to avoid unpleasantness and legal wrangling over the dock. It, indeed, may be in the interest of all of those who have descended from the original purchasers now to provide for access for those lots that have no waterfront. But it is not for us to decide how those who granted the original easement

would like to have the current dispute among their descendants decided today. And, further, it is not for us to decide whether the limitation of the easement is in the best interests of the current landholders or a majority of them.

In reviewing a case tried without a jury, we must "review the case on both the law and the evidence. [We] will not set aside the judgment of the trial court on the evidence unless clearly erroneous and will give due regard to the opportunity of the trial court to judge the credibility of witnesses." Md. Rule 8–131(c).

> It is not our function to substitute our judgment for that of the fact finder, even if we might have reached a different result. Instead, we must "decide only whether there was sufficient evidence to support the trial court's findings. In making this decision, we must assume the truth of all the evidence, and of all the favorable inferences fairly deducible therefrom, tending to support the factual conclusions of the lower court."

*Nicholson Air Servs. v. Bd. of County Comm'rs of Allegany County* 120 Md.App. 47, 67, 706 A.2d 124 (1998) (quoting *Mercedes–Benz v. Garten,* 94 Md.App. 547, 556, 618 A.2d 233 (1993)). After considering the evidence, we do not find that the conclusion of the trial court as to the intention of the grantor in making the deed was clearly erroneous and therefore we will not reverse the court's decision.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**

BECKER, Judge, concurring and dissenting.

I agree with the holding that the trial court was not clearly erroneous in concluding that the intention of the grantor was not to expressly convey the right to construct a pier appurtenant to the right-of-way in the 1957 deed creating the easement as alleged in Count III of the complaint below. I disagree, however, on grounds that the majority opinion does

not address the failure of the trial court to properly rule on two issues set out below.

> Rule 2–522. Court decision—Jury Verdict reads:
>
> (A) Court decision. In a contested court trial, the judge, before or at the time judgment is entered, shall dictate into the record or prepare and file in the action a brief statement of the reasons for the decision and the basis of determining any damages.

Md. Rule 2–602 requires adjudication of all claims against all parties as noted by the Court of Appeals:

> If a ruling of the court is to constitute a final judgment, it must have at least three attributes: .... (2) unless the court properly acts pursuant to Md. Rule 2–602(b), it must adjudicate or complete the adjudication of all claims against all parties....

*Rohrbeck v. Rohrbeck,* 318 Md. 28, 41, 566 A.2d 767 (1989).

> Whether a judgment has been rendered is a determination that must be made on a case by case basis and that 'turns on whether the court indicated clearly that it had fully adjudicated the issue submitted and had reached a final decision on the matter at that time.'

*Board of Liquor v. Fells Point Cafe,* 344 Md. 120, 128, 685 A.2d 772 (1996) (quoting *Davis v. Davis,* 335 Md. 699, 646 A.2d 365 (1994)).

Thus, it is required that a trial judge adjudicate all of the issues raised and give an adequate explanation in the record of his determination. I would find that here there was a failure to do so, as required by the authorities just cited. See the Record Extract pp. 421 to 429, particularly pp. 428–429.

The first issue not addressed is that raised initially in Count II of the Complaint below and in their Argument I in their appeal that the appellants have an implied easement to construct and use a pier appurtenant to their easement to use the channel of the Patuxent River/Island Creek.

> Easements by implication may be created in a variety of ways, ... and implied grant or reservation where a quasi-

easement has existed while the two tracts are one ... An implied easement is based on the presumed intention of the parties at the time of the grant or reservation as disclosed from the surrounding circumstances rather than on the language of the deed ... As a result, courts often refer to extraneous factors to ascertain the intention of the parties. (Citations omitted.)

*Boucher v. Boyer*, 301 Md. 679, 688, 484 A.2d 630 (1984).

The second issue not addressed is that raised initially in Count V and in Argument II that the appellants are the dominant owner of the easement and by virtue of that, should be permitted by Calvert County to construct a pier appurtenant to the right-of-way.

I would find that the trial court did not adequately rule or, at least, make an adequate statement on the record of his decision concerning these two issues, particularly the first which was properly raised in this appeal.

Therefore, I would remand this case back to the Circuit Court for Calvert County for compliance as noted.