In re G. Ware TRAVELSTEAD, Debtor.

G. Ware Travelstead,

v.

Ray Velazquez, et al.

Bankruptcy No. 96–5–4979–ESD.
Adversary No. 99–5735–ESD.
Civil No. CCB–00–872.

United States District Court, D. Maryland.

July 20, 2000.

Kenneth Oestreicher, Whiteford, Taylor and Preston, Baltimore, MD, for appellant.

Timothy F. McCormack, Jay A. Shulman, Gordon, Feinbalt, Rothman, Hoffberger & Hollander, LLC, Baltimore, MD, appellees.

### MEMORANDUM

BLAKE, District Judge.

Defendants Ray Velazquez and Calypso Acquisition Corporation ("Calypso") filed a Motion for Leave to Appeal an Order entered by the Bankruptcy Court on March 15, 2000, denying the Defendants' Motion to Dismiss the Adversary Proceeding Complaint filed by Plaintiff, G. Ware Travelstead (the "Debtor"). No hearing is deemed necessary. *See* Local Rule 105.6. For the reasons articulated below, the Defendant's Motion for Leave to Appeal the Bankruptcy Court's Order Denying Defendants' Motion to Dismiss Complaint will be granted, and the March 15, 2000 Order of the Bankruptcy Court will be affirmed.

### BACKGROUND

The Debtor filed a voluntary petition for relief under Title 11 of the United States Code on May 31, 1996. By an Order

entered December 31, 1997, the United States Bankruptcy Court for the District of Maryland approved Travelstead's Modified Fifth Amended Disclosure Statement and confirmed Travelstead's Third Modified Fourth Amended Plan of Reorganization. (Pl.'s Opp'n Exs. 4, 6) While the Debtor's litigation interest against the Defendants is included in his Disclosure Statement, the Plan makes no mention of it. (*Id.* Ex. 6 at 33–34) The Plan does, however, specify certain assets which are to be used to pay back creditors. (*Id.* Ex. 4 ¶¶ 5.4, 5.5, 5.6)

On October 20, 1999, the Debtor filed the instant action against Mr. Velazquez; he amended the complaint on January 7, 2000 to add Calypso as a Defendant. (*Id.* Ex. 1)

The amended complaint alleges that as of May 31, 1996, the Debtor owned 50% of Fepate SL, a Spanish company ("Fepate"). At that time, Fepate owned the franchise rights to develop and operate four Planet Hollywood restaurants in Spain. The franchise agreement between Fepate and Planet Hollywood, Inc. specified the cities where Fepate could open restaurants and set forth a schedule for the opening of the Planet Hollywood restaurants in Spain. The Franchise Agreement provided that Fepate would forfeit any remaining franchise rights if it failed to meet the schedule for opening restaurants. Mr. Velazquez owned the remaining 50% interest in Fepate. (*Id.*)

The amended complaint alleges that in November 1995, the Debtor borrowed $570,000 from Timothy E. Wyman ("Wyman") to help finance the acquisition of certain real property on Maryland's Eastern Shore known as Cottingham Farm. The Debtor pledged his stock in Fepate, along with other property, to secure the debt. In March 1996, when the loan became due, Mr. Wyman entered a confes-

sion of judgment against the Debtor. This judgment became a lien against the Debtor's real property located at 4474 Boone Creek Road, Oxford, Maryland. (*Id.* at 4) On October 3, 1996, Mr. Wyman filed a motion in the Bankruptcy Court for relief from the automatic stay in order to foreclose on his judgment liens. (Id.)

Concerned that his investment in Fepate was at significant risk because his co-investor had filed for personal bankruptcy and mortgaged the Fepate stock, Mr. Velazquez formed a corporation named Calypso, through which he purchased Mr. Wyman's claim.[1] (Def.'s Mem. Supp. Mot. Leave App. at 6) According to the complaint, during the course of the negotiations regarding the motion to lift the stay, Mr. Velazquez concealed his ownership of Calypso and made numerous misrepresentations to the Debtor regarding the status of negotiations surrounding the opening of a second Planet Hollywood. (Pl.'s Opp'n at 5–6)

Relying on these alleged misrepresentations, the Debtor settled the lift stay litigation with Calypso and sold his 50% interest in Fepate to Calypso for $1,500,000, which was paid in a combination of credit against Calypso's claim and a cash payment from Calypso to the Debtor. (Def.'s Mem. Supp. Mot. Leave App. at 6) The settlement was presented to and approved by the Bankruptcy Court and Calypso obtained title to the one-half interest in Fepate owned and controlled by Travelstead. (*Id.*)

On October 20, 1999, the Debtor filed an adversary proceeding against Mr. Velazquez and Calypso. (Pl.'s Opp'n at 2) In the Amended Complaint, the Debtor brings claims of breach of fiduciary duty, civil conspiracy, fraud, and interference with a prospective business advantage against Mr. Velazquez and Calypso and seeks relief from the Bankruptcy Court's

---

1. The exact sequence of events concerning Mr. Wyman's motion to lift the stay, Calypso's purchase of Mr. Wyman's interest, and the acts of Mr. Velazquez are disputed and the subject of the Debtor's action against Mr. Velazquez. For purposes of this motion, we will view the facts in the light most favorable to the non-moving party.

Order approving the settlement with Calypso. (*Id.* Ex. 1)

The Defendants filed a motion to dismiss on January 24, 2000, claiming that the Bankruptcy Court lacked subject matter jurisdiction. Alternatively, they sought dismissal based on *forum non conveniens*. The Defendants claimed that as the Debtor's interest in litigation against them was not specifically mentioned in the Plan of Reorganization as a method of payment to the creditors, it reverted back to the Debtor pursuant to the plan's provision, which states: "Upon confirmation of the Plan, all of [the Debtor's] property shall revert in [the Debtor] free and clear of liens, claims and encumbrances, except as may be otherwise set forth herein." Accordingly, the Defendants argued that the Bankruptcy Court did not possess subject matter jurisdiction over the adversary proceeding, because the litigation interest is the Debtor's personal property, not that of the bankruptcy estate.

At a hearing on March 10, 2000, Bankruptcy Judge E. Stephen Derby issued an oral opinion denying the Defendants' Motion to Dismiss.[2] (*Id.* at 8; Ex. 9) Accordingly, Defendants filed this Motion for Leave to Appeal the Bankruptcy Court's Order.[3]

## MOTION FOR LEAVE TO APPEAL

### A. Standard of Review

The court has jurisdiction over appeals from the Bankruptcy Court in this district pursuant to 28 U.S.C. § 158. *See In re Jackson,* 190 B.R. 808, 810 (W.D.Va. 1995); *In re Fraidin,* 188 B.R. 529, 532 (D.Md.1995). While an order dismissing a bankruptcy case is a final order appealable by right, orders denying a motion to dismiss are interlocutory in nature and are only appealable by leave of the court. *See In re Jackson,* 190 B.R. at 810; *In re*

*Hebb,* 53 B.R. 1003 (D.Md.1985). While § 158 offers no guidance at to how district courts should exercise their discretion in granting interlocutory appeals, most courts have analogized to the standards set forth in 28 U.S.C. § 1292(b), the statute governing discretionary appeals of interlocutory orders in non-bankruptcy cases. *In re Hebb,* 53 B.R. at 1006. The analysis concerns "(1) whether the order involves a controlling question of law as to which there is substantial ground for difference of opinion; and (2) whether immediate appeal would materially advance the termination of the litigation." *Id.*

### B. Analysis

Defendants Mr. Velazquez and Calypso have moved for leave to appeal the Bankruptcy Court's Order denying their Motion to Dismiss. On June 27, 2000, pursuant to Local Rule 403.5, this court requested the Honorable E. Stephen Derby to submit a written certification stating whether, in his opinion, "the interlocutory order involves a controlling question of law as to which there is substantial ground for difference of opinion and whether an immediate appeal of it may materially advance the ultimate termination of the case." Judge Derby promptly certified, on June 30, 2000, that his March 15, 2000 Order did involve a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal of it may materially advance the ultimate termination of this adversary proceeding. Accordingly, the court will briefly review the Defendants' request in light of these three issues. *In re Swann Ltd. Partnership,* 128 B.R. 138, 141 (D.Md. 1991).

### 1. Controlling Question of Law

An order involves a controlling question of law when either (1) reversal of

---

**2.** A written Order was issued March 15, 2000. (Pl.'s Opp'n Ex. 3)

**3.** The Debtor filed an opposition on April 17, 2000. Despite requesting and receiving an extension of time, the Defendants have not filed a reply.

the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation. *See Ovando v. City of Los Angeles,* 92 F.Supp.2d 1011, 1025 (C.D.Cal.2000); *North Fork Bank v. Abelson,* 207 B.R. 382, 389 (E.D.N.Y.1997). In the present case, reversal of the Bankruptcy Court's Order denying the dismissal of the suit for lack of subject matter jurisdiction would terminate the lawsuit. *North Fork Bank,* 207 B.R. at 390. The court agrees that the determination that the adversarial proceeding is unrelated to the bankruptcy proceeding would strip the Bankruptcy Court of subject matter jurisdiction. Accordingly, the court finds that the appeal from the Bankruptcy Order does involve a controlling question of law.

### 2. Substantial Grounds for Difference of Opinion

The controlling question of law here is whether the Bankruptcy Court has subject matter jurisdiction over the adversary proceeding filed by the Debtor against the Defendants. Section 1334 of Title 28 of the United States Code grants subject matter jurisdiction over all cases arising under the Bankruptcy Code, as well as "all civil proceedings under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a), (b). Section 157(a) further refers "all proceedings arising under title 11 or arising in or related to a case under title 11" to the Bankruptcy Court. § 157(a).

■■ In *A.H. Robins Co. v. Piccinin,* 788 F.2d 994 (4th Cir.1986), the Fourth Circuit defined "related to" jurisdiction under § 1334(b):

> An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Id.* at 1002 n. 11 (internal quotation marks omitted) (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)). Subsequent decisions have clarified that "related to" jurisdiction is to be broadly interpreted. *See, e.g., In re Johnson,* 960 F.2d 396, 403 (4th Cir.1992); *In re A.H. Robins Co.,* 182 B.R. 128, 133 (Bankr.E.D.Va.1995) (holding that § 1334(b) is to be liberally construed "especially where the question at hand involves the interpretation" of a plan of reorganization), *aff'd,* 86 F.3d 364 (4th Cir.1996).

As Judge Derby said in his certification of the interlocutory appeal, "because the court's finding that it possesses 'related to' jurisdiction was based on the interplay of various provisions of Debtor's confirmed plan and the plan confirmation order, the intended purpose of the plan, and contemporaneous representations of Debtor's counsel during the plan confirmation hearings, rather than a plan provision that expressly addressed the instant claim, there appears to be substantial ground for difference of opinion." (June 30, 2000 Order Certifying Controlling Question Raised by Interlocutory Appeal) Accordingly, the Defendants have proffered substantial grounds for difference of opinion.

### 3. Materially Advance the Ultimate Termination of the Litigation

Thirdly, to justify leave to file an interlocutory appeal, resolution of the disputed issue must materially advance the ultimate termination of the litigation. *See Genentech, Inc. v. Novo Nordisk, A/S,* 907 F.Supp. 97, 100 (S.D.N.Y.1995) ("For certification to be appropriate, the district court must be of the opinion that immediate appeal of an order will literally accelerate the action as a whole."). Such is the case here. Reversal of the Bankruptcy Court's Order would result in dismissal of the entire action. Accordingly, the third requirement is met.

The Defendants have met the three requirements to warrant leave to file an interlocutory appeal. Accordingly, the Defendant's Motion for Leave to Appeal the March 15, 2000 Order issued by the Bank-

ruptcy Court will be granted. Because both parties have fully briefed the merits of the issue, the court can move directly to disposition of the underlying issue.

### APPEAL OF BANKRUPTCY COURT'S ORDER DENYING DEFENDANT'S MOTION TO DISMISS

A. Standard of Review

■ When considering an appeal from the bankruptcy court, the district court must accept the bankruptcy court's findings of fact unless they are clearly erroneous. *See In re Johnson,* 960 F.2d 396, 399 (4th Cir.1992). Bankruptcy court's conclusions of law, however, will be reviewed de novo. *See id.*

B. Analysis

As stated by the Bankruptcy Court at the March 10, 2000 hearing on the Defendant's Motion to Dismiss, "[T]he key to the issue in this case is whether or not this lawsuit as an asset of the debtor is treated under the debtor's Plan of Reorganization because if it is, then there is related to jurisdiction because it is related to the plan and to the implementation of the plan and to the carrying out of the plan that is confirmed." (Pl.'s Opp'n Ex. 9 at 3–4)

As discussed above, Section 1334 of Title 28 of the United States Code grants subject matter jurisdiction over all cases arising under the Bankruptcy Code, as well as "all civil proceedings under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a), (b). Section 157(a) further refers "all proceedings arising under title 11 or arising in or related to a case under title 11" to the Bankruptcy Court. § 157(a). *See also A.H. Robins Co.,* 788 F.2d at 1002 n. 11 (noting that an action is "related to" a bankruptcy proceedings "if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or nega-

tively) and which in any way impacts upon the handling and administration of the bankrupt estate" (internal quotation marks omitted) (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984))); *In re A.H. Robins Co.,* 182 B.R. 128, 133 (Bankr. E.D.Va.1995) (holding that § 1334(b) is to be liberally construed "especially where the question at hand involves the interpretation" of a plan of reorganization), *aff'd,* 86 F.3d 364 (4th Cir.1996).

In their appeal, Defendants contend that the Bankruptcy Court's denial of their Motion to Dismiss is erroneous for two reasons. First, the Defendants claim that the Bankruptcy Court erred in finding the Plan ambiguous and consulting extrinsic evidence to ascertain the intent of the parties. According to the Defendants, the Plan unambiguously provided that all assets not specified as available for repayment to the creditors reverted to the Debtor upon confirmation of the Plan.

■ The Bankruptcy Court's determination that the Plan was ambiguous is a legal conclusion subject to de novo review. *See Moore Brothers Co. v. Brown & Root, Inc.,* 207 F.3d 717, 726 (4th Cir.2000). A writing is ambiguous if it is "susceptible to two reasonable interpretations." *Goodman v. Resolution Trust Corp.,* 7 F.3d 1123, 1126 (4th Cir.1993) (internal quotation marks omitted) (quoting *American Fidelity & Casualty Co. v. London & Edinburgh Ins. Co.,* 354 F.2d 214, 216 (4th Cir.1965)).

■ While the Plan does provide that all assets of the estate are available for distribution to creditors,[4] it also lists specific assets that should be liquidated and used to pay creditors. (Pl.'s Opp'n Ex. 4 §§ 5.4, 5.5, 5.6). It is unclear whether the list of specific assets is meant to be an exhaustive list of the assets to be used for repayment, in which case those not mentioned, such as the claim against Calypso,

---

4. The Plan states: "The Plan shall be funded from the Net Proceeds of Sale and/or refinance of entities and/or assets in which the

Debtor has an interest." (Pl.'s Opp'n Ex. 4 § 4.1)

would revert to the Debtor upon confirmation of the Plan, or whether other property of the Debtor also is available for repayment. The relevance, of course, is that the former interpretation precludes the exercise of subject matter jurisdiction by the Bankruptcy Court, because the adversary proceeding would not be related to the disposition of the bankruptcy estate.

As the Bankruptcy Court found, and as this court agrees, the Plan is ambiguous; both interpretations discussed above are reasonable. *See Calomiris v. Woods*, 353 Md. 425, 727 A.2d 358, 363 (1999). Accordingly, the court rejects the Defendants' first argument.

■ Secondly, the Defendants argue that even if the Bankruptcy Court was correct in concluding the Plan was ambiguous, it erred in holding that its subject matter jurisdiction extended to the claim against Calypso. Because the Plan was ambiguous, it is appropriate to review the transcripts from the confirmation hearings to determine the parties' intent. *See Gwynn v. Oursler*, 122 Md.App. 493, 712 A.2d 1072, 1075 (1998) (permitting the examination of extrinsic evidence to discern the intent of the contracting parties).

The transcripts of the Bankruptcy Court's hearing on December 18, 1997 evidence Judge Derby's concern that certain assets of the Debtor might be shielded from liquidation for paying the creditors. Accordingly, the attorney for the Debtor, as well as the Debtor himself, emphasized that all the Debtor's assets were subject to the Plan. As Mr. Oestreicher, the Debtor's attorney, stated at the hearing, "there are no reserve assets. All of the assets of the debtor are now subject to the powers of the liquidating trustee." (Pl.'s Opp'n Ex. 7 at 88) In response to the Bankruptcy Court's question as to whether there is "an understanding as to what assets the liquidating agent is authorized to sell under the plan," the Debtor replied, "Any and all of them." (*Id.* Ex. 7 at 116)

Similarly, at the hearing on December 29, 1997, an attorney for the Debtor, in describing the Plan, stated:

However, no inference should be drawn from the inclusion of the details about assets, or listing of assets, that the plan is intended to hold back any assets from the liquidating agent. That's not the intent, that's not the purpose, and that's not why the specific language about assets is in there.

(*Id.* Ex. 8 at 8) The above passages evidence the intent of the parties to include all assets in the Plan; the mere fact that certain assets were specified to be used for repayment of specific creditors does not mean that the unmentioned assets were intended to revert to the possession of the Debtor upon confirmation. Rather, all of the assets are subject to liquidation by the trustee. (*Id.* Ex. 7 at 116)

The court agrees with Judge Derby's determination that the parties intended to include all named and unnamed assets as part of the bankruptcy estate. The Order approving the Plan confirms the court's understanding based on the representations of counsel at the hearing. The Order states that "the rights, duties, and obligations of the Liquidating Agent, as defined in the Plan, shall be applicable to all of the assets of the estate, whether known or unknown." (*Id.* Ex. 5 at 3) Therefore, the Debtor's interest in the instant litigation, which was mentioned in the Disclosure, but not the Plan, is included as an asset; the Bankruptcy Court has jurisdiction over the claim under § 1334(b). *See A.H. Robins Co.*, 788 F.2d at 1001 n. 11 (holding that a claim which impacts the ultimate disposition of the bankruptcy estate is included in "related to" jurisdiction under § 1334(b)).

Accordingly, the Bankruptcy Court's March 15, 2000 Order denying the Defendants' Motion to Dismiss will be affirmed.